627 So.2d 629 (1993)
Gerald A. BOSWORTH, et al.
v.
John P. WHITLEY, Warden.
No. 93-CA-1829.
Supreme Court of Louisiana.
November 29, 1993.
Rehearing Denied January 27, 1994.
*630 Richard P. Ieyoub, Atty. Gen., Carol A. Jewell, Mary P. Jones, for applicant.
Gerald A. Bosworth, pro se.
Julian R. Murray, Jr., Helen G. Berrigan, William L. Kline, for respondent.
CALOGERO, Chief Justice.[*]
In this case, we examine the law relative to the Parole Board's policy of refusing to consider parole eligibility for inmates sentenced to serve life sentences between July 26, 1972 and July 2, 1973, while 1972 La.Acts No. 502[1] was in force. Concluding that the Board's policy is legally correct, we reverse the judgment entered in the district court which had ruled that twenty-nine inmates serving life sentences in Angola Penitentiary are eligible for immediate parole consideration.
In 1972, the United States Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which ruled that the death penalty, as then applied in Louisiana, was unconstitutional. Accordingly, the imposition of the death penalty under the then existing Louisiana statutes, which, incidentally, allowed juries the discretion to impose the death penalty or a lesser penalty (La.Rev.Stat.Ann. § 14:30 and La. Code Crim.Proc. art. 817), was found to constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Giving effect to Furman, this Court affirmed a conviction under these provisions, while annulling the death sentence and remanding to the trial judge "to sentence the defendant to life imprisonment." State v. Franklin, 263 La. 344, 268 So.2d 249, 250 (1972).
Twenty-nine inmate/appellees are currently serving life terms in Angola Penitentiary for murder or aggravated rape, committed in 1972 or earlier. At least fifteen of these inmates were originally sentenced to death. Four other of the twenty-nine entered guilty pleas without capital punishment. Several of the twenty-nine are serving multiple terms.[2] Between July 26, 1972 and July 2, 1973, a period which coincided with the effective dates of 1972 La.Acts No. 502, those twenty-nine inmates were sentenced or re-sentenced to life imprisonment. None of the sentences by their terms carried parole restrictions.
Notwithstanding that La.Rev.Stat.Ann. § 15:574.4(B) (West 1992) provides that no prisoner serving a life sentence shall be eligible for parole consideration until that sentence *631 has been commuted to a fixed number of years, the inmates filed an Application for Writs of Habeas Corpus and Mandamus and sought to be declared eligible for immediate parole consideration without regard to that statutory precondition. Finding the application of Section 15:574.4(B) to the appellees to be ambiguous, and in conflict with other laws and the separation clause of the Louisiana Constitution, as well as a violation of due process, the commissioner of the Nineteenth Judicial District Court[3] concluded that these twenty-nine inmates were eligible immediately for parole consideration. The Attorney General, who had intervened pursuant to La. Const. IV, § 8,[4] appealed the findings of unconstitutionality to this Court.

PAROLE
Louisiana's system of parole is set out in La.Rev.Stat.Ann. § 15:574.2 (West 1992), et seq. The scheme defines parole as "an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint." La.Rev.Stat.Ann. § 15:574.11 (West 1992). A Board of Parole is established within the Department of Public Safety and Corrections and is vested with authority to determine "the time and conditions of release on parole" for felons sentenced to imprisonment and confinement in correctional or penal institutes in the state. La.Rev.Stat.Ann. § 15:574.2(A) and (C) (West 1992). Prior to each inmate's parole eligibility date, the Board has the duty to consider information, which includes the circumstances of the offense, presentence investigative reports, social history, criminal record and record while in prison. La.Rev.Stat. Ann. § 15:574.2(C)(6) (West 1992). After considering such information, as well as reports of data supplied by the staff, the Board may convene a parole hearing if appropriate, or if such hearing is requested by the staff in writing. La.Rev.Stat.Ann. § 15:574.4(C) (West 1992). The Board is authorized to adopt rules it deems necessary and proper with respect to both the conduct of these hearings and the eligibility of prisoners for parole. La.Rev.Stat.Ann. § 15:574.2(C)(7) (West 1992). The conditions of parole as well as the granting or revocation thereof rest in the discretion of the Board of Parole, whose decisions generally cannot be appealed. La.Rev.Stat.Ann. § 15:574.11 (West 1992).
While the foregoing emphasizes the power and authority of the Board of Parole, the general parole provisions contained in Section 15:574.4 clearly reveal that parole eligibility (which is determined by the sentence) and eligibility for parole consideration (which is dependent on meeting certain criteria and conditions specified by statute) are closely regulated by the Legislature. In Subsection A(1), the scheme provides that inmates otherwise eligible for parole, prisoners whose sentences do not carry parole restriction, become eligible for parole consideration under the following circumstances: when a first time offender has served one-third of the sentence imposed or when a second offender has served one-half of the sentence imposed. A person convicted of a third or subsequent felony is not eligible for parole. Although not applicable to an inmate serving a life sentence which has not been commuted to a fixed term of years, Section 15:574.4(A)(3) provides that prisoners sentenced to terms of thirty years or longer and who have reached the age of forty-five are eligible for parole consideration after serving at least twenty years in actual custody. Further legislative regulation of eligibility for parole consideration is contained in Subsection B, the statutory *632 provision found unconstitutional by the Commissioner. It provides:
No person shall be eligible for parole consideration who has been convicted of armed robbery and denied parole eligibility under the provisions of R.S. 14:64, or who has been convicted of violation of the Uniform Narcotic Drug Law and denied parole eligibility under the provisions of R.S. 40:981. No prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years. No prisoner may be paroled while there is pending against him any indictment or information for any crime suspected of having been committed by him while a prisoner. (emphasis added)
The Louisiana Legislature has thus provided parole consideration to inmates meeting specified standards and criteria, and has given to the Parole Board authority to make the final decision whether to release on parole. That scheme requires that those serving life sentences must first obtain a commutation by which the term of life is reduced to a fixed number of years, by petitioning the governor for clemency through the Board of Pardons, before becoming eligible for parole consideration.

THE CONSTITUTIONAL CHALLENGES
I. Separation of Powers Clause
The Louisiana Constitution provides that the "powers of government of this state are divided into three separate branches: legislative, executive, and judicial." La. Const. art. II, § 1. Furthermore, according to Section 2 of Article II, "no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
The "legislative or law making power of Louisiana" is vested in the Legislature. La. Const. art. III, § 1(A); State v. Broom, 439 So.2d 357, 366 (La.1983). Similarly, the "fixing of penalties for criminal acts is a matter of legislative discretion." State v. Vittoria, 224 La. 258, 69 So.2d 36, 37 (La.1953).
However, the people of Louisiana have traditionally invested the executive with broad powers of clemency. The governor's power to commute dates from Article 66 of the Constitution of 1879, and the authority to pardon, reprieve and remit can be traced to the 1804 Territorial Laws of Louisiana and Orleans. Executive powers of clemency are today enumerated in La. Const. art. IV, 5(E), which provides:
(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
(2) The Board of Pardons shall consist of five electors appointed by the governor, subject to confirmation by the Senate. Each member of the board shall serve a term concurrent with that of the governor appointing him.
This constitutional delegation of power to the executive underpins Louisiana's statutory provisions on clemency, which include reprieve, pardon, and commutation of sentence, found at La.Rev.Stat.Ann. § 15:572 (West 1992), et seq.
The statutory scheme does not violate the Separation of Powers Clause. By regulating the qualifications which attach to eligibility for parole consideration, the Legislature has exercised its exclusive authority to determine length of punishment for crimes classified as felonies. However, there are no restrictions on the exercise of the executive's traditional prerogative to ameliorate harsh penalties otherwise provided by law for offenders who have proved their ability to rehabilitate in a custodial environment. Thus, the governor's exclusive authority over matters of clemency pursuant to Article IV, § 5(E) of the Constitution is also maintained.
II. Due Process
Due process applies when government action deprives a person of life, liberty, *633 or property. In evaluating a claimed denial, the court must determine the nature of the claimed interest. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 8, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). To prevail, the claimant must have "more than an abstract need or desire" for the asserted right and "more than a unilateral expectation of it." Instead, he must have a "legitimate claim of entitlement to it." Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).
The Commissioner found and the appellees here urge that a due process right to parole consideration cannot be conditioned on a wholly discretionary gubernatorial commutation. Citing Martin v. Foti, 561 F.Supp. 252 (E.D.La.1983), they suggest that, in Louisiana, parole statutes have created a liberty interest.
The power and authority to commute, constitutionally vested in the governor, is discretionary. Gaillard v. Cronvich, 263 La. 750, 269 So.2d 231, 232 (1972). Inmates have neither a constitutional nor an inherent right to commutation. Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). In terms of due process, an application for commutation is "nothing more than an appeal for clemency," and a felon's expectation that his lawful sentence will be commuted is "simply a unilateral hope." Id. at 465, 101 S.Ct. at 2465.
The existence of a parole system does not by itself give rise to a constitutionally protected liberty interest in early release. Board of Pardons v. Allen, 482 U.S. 369, 374, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303 (1987); Greenholtz v. Inmates of Nebraska Penal Inmates, 442 U.S. at 11, 99 S.Ct. at 2105. Laws or regulations providing that a parole board "may" release an inmate on parole have not been found to give rise to that interest. Board of Pardons v. Allen, 482 U.S. at 378, n. 10, 107 S.Ct. at 2421, n. 10.[5]
Reviewed against Greenholtz and Board of Pardons v. Allen, it is apparent that the Louisiana parole statutes do not create an expectancy of release or liberty interest in general, or for those with life terms in particular. Inmates meeting standards contained in the law do have a statutory right to parole consideration, but the Parole Board has full discretion when passing on applications for early release. Furthermore, the Louisiana scheme specifically excludes parole consideration for inmates serving uncommuted life sentences. An inmate can remove this impediment to parole consideration by petitioning for an award of clemency in the form of commutation. If clemency is granted, the inmate joins the pool of other qualifying prisoners entitled to be considered by the Board for conditional early release on parole.
Louisiana's constitutional and statutory provisions governing reprieve, pardon, and parole form a coherent whole. The scheme gives effect both to the Legislature's authority to define and establish penalties for criminal offenses and to the executive's plenary power to reprieve, pardon, commute and remit fines and forfeitures. Within the scheme, there have historically been placed restrictions on sentences of life imprisonment, which either disallowed parole altogether or required commutation as a pre-requisite to parole consideration. Offenses carrying life terms are among the most, if not the most, serious. Requiring that inmates convicted of such offenses first demonstrate *634 merit for an award of executive clemency before receiving consideration for early release on parole is therefore reasonable. Such restrictions preclude any presumption that parole release will be available to felons sentenced to life imprisonment. Accordingly, we conclude that Louisiana's scheme regarding pardon and parole does not violate the constitutional mandates regarding either separation of powers or due process.

STATUTORY INTERPRETATION
I. Applicability and Vagueness of La.Rev. Stat.Ann. § 15:574.4(B) (West 1992)
The district court found ambiguous the application to appellees of Section 15:574.4(B), which provided at the time of their resentencings, as it does now, that no prisoner serving a life sentence shall be eligible for parole consideration until that sentence has been commuted to a fixed number of years. That conclusion was based on the language of the sentences, for nothing in the sentences themselves conditioned parole eligibility on a commutation of sentence.
The sentences, however, were imposed in accordance with the directive of this Court in State v. Franklin, 268 So.2d at 253. Trial judges were instructed to annul the sentences imposed under La.Rev.Stat. § 14:30 and La.Code Crim.Proc. art. 817 and "to sentence the defendant to life imprisonment." There was no directive with regard to parole eligibility. However, Section 15:574.4(B) specifically addressed eligibility for parole consideration for prisoners serving life sentences. Whatever the language of the sentences, it was not intended to denigrate the existing statutes which precluded parole consideration for those inmates who had been sentenced to life imprisonment.
However, it has also been suggested that § 15:574.4(A)(3) and (B) are unconstitutionally vague in failing to specify how or by whom a sentence may be commuted to a fixed term of years. Unlike its prior enactment, which stated clearly that parole would not be granted until a life sentence had been commuted to a fixed term of years "by action of the state board of pardons and the Governor," the present statute does not designate the appropriate entity to grant this commutation. While the designated entity does not appear in Section 15:574.4, it does appear in Section 15:572 which provides that, upon the recommendation of the Board of Pardons, the governor may commute sentences. Both provisions are contained in Chapter 5 of the Code of Criminal Procedure, entitled "Reprieve, Pardon, and Parole," and statutes in pari materia are construed together. The statutes together, therefore, provide sufficient information to avoid the vagueness claim raised by appellee.
II. Conflict Between § 15:574.4 and 1972 La.Acts No. 502, which amended La. Code Crim.Proc. art. 817:

When inmates/appellees were sentenced or re-sentenced between July 26, 1972 and July 2, 1973, La.Code Crim.Proc. art. 814 provided for a responsive verdict of "guilty without capital punishment" for murder and aggravated rape, and Article 817 authorized life terms when guilty verdicts for these crimes were thus qualified by trial juries. Reasoning that the responsive verdict of guilty without capital punishment was the next authorized verdict for the crimes of murder and aggravated rape, the Court remanded cases, which had imposed constitutionally infirm penalties, for resentencing as if that verdict had been returned and life imprisonment were required by statute. State v. Craig, 340 So.2d 191, 193 (La.1976).
Thus, these sentences to life imprisonment for prisoners who first were given death and later resentenced or who pled guilty without capital punishment, were drawn from Articles 814 and 817. As imposed at the district court, the sentences did not recite ineligibility for parole. Nonetheless, eligibility for parole consideration is unavailable until the life terms are commuted to a fixed number of years under the parole statute, Section 15:574.4. As noted earlier in this opinion, parole eligibility and eligibility for parole consideration are distinct and different matters.
There is no conflict between 1972 La.Acts 502, which amended Article 817, and Section 15:574.4(B). The Code of Criminal *635 Procedure provision addresses verdicts, and the relevant subsection of the Revised Statutes regulates early conditional release of felons from the custody of the Department of Corrections. The provisions operate concurrently, with no disharmony. In a similar situation, this Court noted that since Section 15:574.4(B) provides unequivocally that no inmate serving a life sentence shall be eligible for parole, parole consideration would be withheld from the defendant, by operation of law, despite the fact that the applicable penalty provision did not include the words "without benefit of parole." State v. Wilson, 362 So.2d 536, 539 n. 3 (La.1978); State v. Lewis, 468 So.2d 557, 560 n. 11 (La.1985). Contrary to the views expressed in the district court opinion, there is no need to resort to rules of construction, to consult enactment dates of legislation, or to resort to the doctrine of repeal by implication.
III. Applicability of La.Code Crim.Proc. Ann. art. 3 (West 1991)
Finally, appellees argue that they have been unfairly disadvantaged as a result of the interplay of statutes that existed during a thirteen month period in 1972 and 1973. Relying on Article 3 of the Code of Criminal Procedure, they ask the Court to affirm the district court decision as the fundamentally fair and right thing to do.
Article 3 of the Louisiana Code of Criminal Procedure provides:
Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.
Since we have found that a specific procedure was prescribed and followed in this instance, the article has no application.

DECREE
Accordingly, we reverse the judgment entered in the district court which found that La.Rev.Stat.Ann. § 15:574.4(B) (West 1992) is "inapplicable and/or unconstitutional with respect to" the twenty-nine inmates/appellees and which ruled that each shall be granted parole consideration.
REVERSED.
NOTES
[*] Watson, J., recused, not on panel.
[1] 1972 La.Acts No. 502, which amended and reenacted La.Code Crim.Proc. art. 817, provided as follows:

In a capital case the jury may qualify its verdict of guilty as follows:
(1) With the addition of the words `without capital punishment', in which case the punishment shall be imprisonment at hard labor for life, or
(2) With the addition of the words `without capital punishment or benefit of parole, probation, commutation or suspension of sentence', in which case the punishment shall be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.
In noncapital cases, any qualification of or addition to a verdict of guilty, beyond the specification of the offense as to which the verdict is found, is without effect upon the finding.
[2] Willie Richmond is serving consecutive life terms for a double murder following separate trials of the counts; Jimmie Graves is serving life plus a consecutive two year term for simple escape; Prentice Robinson is serving life plus a consecutive ten year term for attempted simple rape; James Green is serving life and a consecutive one year term for aggravated battery; David Foy is serving a fifteen year term for armed robbery and a consecutive sentence of life; Roy Collins is serving life plus a two year consecutive term for simple escape.
[3] The office of commissioner of the Nineteenth Judicial District Court was created by La.Rev. Stat.Ann. § 13:711 (West 1993) to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. In the usual case, a commissioner submits written findings and recommendations to a district judge, which may be accepted, rejected or modified. However, the parties may consent to adjudication by a commissioner, who may order the entry of a judgment which is to be signed by a judge of the district court.
[4] La. Const. art. IV, § 8, declares that

There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state....
As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; ...
[5] Despite the general proposition that the existence of a parole system does not by itself give rise to a constitutionally protected liberty interest in early release, the United States Supreme Court found that the statutes of Montana and Nebraska did create an expectancy of release, such as was entitled to protection under the Due Process Clause. The Court found significant that the Montana statute "uses mandatory language (`shall') to create a presumption that parole release will be granted when the desired findings are made." Board of Pardons v. Allen, 482 U.S. at 377-8, 107 S.Ct. at 2420. The Nebraska statute at issue stated that the Parole Board "shall order" release when it determines that release would not be harmful, unless certain specified conditions or factors exist that would preclude parole. Therefore, the Court found that the law's "unique structure" and mandatory language bound the Board to release an inmate unless one of the designated justifications for deferral was found. Greenholtz v. Nebraska, 442 U.S. at 12-13, 99 S.Ct. at 2106-2107.