laPARRO, Judge.
Jackie R. Damone (“Damone”) appeals from the district court judgment dismissing his petition for a writ of habeas corpus and mandamus. For the following reasons, we affirm.

Facts and Procedural History

In 1968, Damone pled guilty to a murder committed on April 1, 1967. On May 24, 1968, he was sentenced to serve the balance of his natural life at hard labor. On July 4, 1992, while serving his life sentence, Damone asked the Department of Public Safety and Corrections (“DPSC”) to change his master prison record to reflect that he was parole eligible, thus enabling him to apply to the Louisiana Board of Parole (“the parole board”) for parole consideration. DPSC responded that it was unable to compute a •parole eligibility date on his life sentence under the current law without instructions from the court and denied Damone’s request.
An application for a writ of habeas corpus and mandamus was filed by Damone with the district court. In his pleadings, Damone requested the issuance of an order stating that he is to be considered immediately eligible for parole consideration. The commissioner found Damone had failed to prove that the law in effect on the date of his offense allowed for parole eligibility on his life sentence. Furthermore, the commissioner found Damone failed to substantiate his claim that he has been denied parole eligibility by an ex post facto application of the law. Based on these findings and the commissioner’s adjudication, the district court signed a judgment dismissing Damone’s claim, with prejudice.[1] From that judgment, Damone appealed, contending the district court erred in denying his application in violation of the applicable version of LSA-C.Cr.P. art. 817 and by enforcing an ex post facto law in violation of the federal and state constitutions.
*1207 1 ^Discussion
Louisiana parole statutes do not create an expectancy of release or liberty interest in general, or for those with life terms in particular. Bosworth v. Whitley, 627 So.2d 629, 633 (La.1993). Although the right to be considered for parole is a substantial one, it is not bestowed on a prisoner until statutory requirements are met.[2] See State ex rel. Woodward v. Board of Parole, 155 La. 699, 99 So. 534, 536 (1924); Bosworth, 627 So.2d at 631-632. Prisoners meeting the statutory requirements have a right to parole consideration, but the parole board has full discretion when passing on applications for early release. Bosworth, 627 So.2d at 633. In other words, parole eligibility does not guarantee parole. State ex rel. Mitchell v. State, 580 So.2d 906, 908 (La.1991).
At the time of Damone’s offense, guilty plea, and sentencing, LSA-C.Cr.P. art. 817 provided, in pertinent part:
In a capital case the jury may qualify its verdict of guilty with the addition of the words “without capital punishment,” in which case the punishment shall be imprisonment at hard labor for life.
In addition to these qualifying words, a 1972 amendment to article 817 allowed the jury to further qualify its guilty verdict in a capital case by adding the words “without capital punishment or benefit of parole, probation, commutation or suspension of sentence,” in which case the punishment was to be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.[3] The effective date of the 1972 amendment was July 26, 1972.[4] Since the crime for which Damone was prosecuted occurred on April 1, 1967, the pre-1972-amendment version of LSA-C.Cr.P. |4art. 817 applies.
Damone argues that under the applicable version of LSA-C.Cr.P. art. 817, he could have been sentenced only to life imprisonment or death. According to Damone, under the law in effect at the time of the offense and his sentencing, a sentence of life imprisonment for murder under LSA-R.S. 14:30 did not prohibit parole, probation, or suspension of sentence. Thus, Damone contends current LSA-R.S. 15:574.4(B), pertaining to eligibility for parole consideration, is inapplicable and he should be ruled parole eligible in light of the number of years he has served.
LSA-R.S. 15:574.4(B) requires prisoners serving life sentences to have their life sentences commuted to a fixed term of years before they are eligible for parole consideration. This statute was enacted in 1968 by La. Act No. 191, § 1. Thus, it was not in effect at the time of the offense or sentencing. Nonetheless, this statute arguably governs Damone’s parole rights because he was serving a prison sentence on July 31, 1968. LSA-R.S. 15:574.13(A).[5] Damone argues the application of LSA-R.S. 15:574.4(B) to his case as authorized by LSA-R.S. 15:574.13(A) would violate the prohibition against ex post facto laws by the Louisiana and the United States Constitutions. Before determining whether this argument has merit, the history *1208 of the statutory scheme pertaining to parole will be reviewed.
Upon rendition of a life sentence for a pre-1972 offense, a defendant had available the right to apply for commutation or parole. State v. Bullock, 263 La. 946, 269 So.2d 824, 826 (1972). In determining what rights Da-mone had with respect to commutation and parole, we note the historical and statutory references following LSA-R.S. 16:674.4 indicate that La. Act No. 191, § 1 of 1968 amended and reenacted “Subpart (1) of Part II of Chapter 5 of Title 15 of the Louisiana Revised Statutes of |s1950.” A review of the disposition table preceding LSA-R.S. 15:574.2 reveals that LSA-R.S. 15:574.4 was a reenactment of former LSA-R.S. 15:574.3 and LSA-R.S. 15:574.7.
At the time of Damone’s offense and sentencing, parole was governed by then LSA-R.S. 15:574.2 — 574.13. The rules for release on parole were modified by 1958 La. Acts No. 377, § 1 and were contained in LSA-R.S. 15:574.3, which provided:
A. The board of parole may release on parole any person who has been convicted of a felony and sentenced to imprisonment, and confined in any penal or correctional institution in this state, and who has served one-third of the maximum sentence imposed. In determining when any prisoner has served the required one-third of his sentence, no diminution of sentence for good behavior shall be considered or allowed.
B. No parole shall be granted to any prisoner serving a life sentence until after his life sentence has been commuted to a fixed term of years by action of the state board of pardons and the Governor, and until the prisoner has served at least one-third of the time fixed by the commutation of sentence.
C. A parole shall be' ordered only for the best interest of society, not as an award of clemency. The board of parole may adopt any rules, not inconsistent with law, as .it may deem proper or necessary, with respect to the eligibility of prisoners for parole, and the conduct of parole hearings. Whenever an order for parole is issued, it shall recite the conditions of parole.
D. Excepting in those cases where the maximum sentence imposed was in excess of five years, and excepting in those cases where the prisoner serving a life sentence received a commutation of sentence to a fixed term of years, a parole may be granted to a first offender who has never previously been convicted of a felony in this or any other state or country without requiring that the offender shall have served the required one-third of his sentence.
í}: ‡ # #
Damone’s life sentence was imposed without restriction as to parole eligibility pursuant to former LSA-C.Cr.P. art. 817. However, former LSA-R.S. 15:574.3 specifically addressed the eligibility for parole consideration by the parole board of a prisoner serving a life sentence. Under former LSA-R.S. 15:574.3(A), a prisoner generally became eligible for parole after serving one-third of the maximum sentence imposed. However, a prisoner serving a life sentence would not become eligible for parole until (1) the life sentence had been commuted to a fixed term of years by action of the state board of pardons and the governor and (2) the prisoner had served at least 16one-third of the time fixed by the commutation of sentence.[6] LSA-R.S. 15:574.3(B). Whatever the language of Damone’s sentence, it was not intended to denigrate the existing statute which precluded parole consideration for those prisoners who had been sentenced to *1209 life imprisonment. See Bosworth, 627 So.2d at 634. Thus, under former LSA-R.S. 15:574.3, eligibility for parole by the parole board would be unavailable until Damone’s life sentence was commuted to a fixed term and he served at least one-third of that fixed term. LSA-R.S. 15:574.3(A) and (B).
Similarly, the current version of LSA-R.S. 15:574.4 requires a prisoner serving a life sentence to first obtain a commutation by which the term of life is reduced to a fixed number of years, by petitioning the governor for clemency through the board of pardons, before becoming eligible for parole consideration. Bosworth, 627 So.2d at 632.
Since both the current and previous Louisiana statutory schemes specifically exclude parole consideration for prisoners serving uncommuted life sentences, we find no manifest error or legal error in the district court’s conclusion that Damone failed to prove he was entitled to be declared parole eligible.[7] Due to the requirements of LSA-R.S. 15:574.4(B) and former LSA-R.S. 15:574.3(B), parole consideration would be withheld from Damone, by operation of law, despite the fact that the applicable penalty provision did not or could not include the words “without.benefit of parole.”[8] See Bosworth, 627 So.2d at 633.
| ^Decree
For the foregoing reasons, the district court’s judgment, dismissing Jackie R. Da-mone’s petition, is affirmed at his costs.
AFFIRMED.

. The office of commissioner of the Nineteenth Judicial District Court was created by LSA-R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. In the usual case, a commissioner submits written findings and recommendations to a district judge, which may be accepted, rejected or modified. However, the parties may consent to adjudication by a commissioner, who may order the entry of a judgment which is to be signed by a judge of the district court. Bosworth v. Whitley, 627 So.2d 629, 631 n. 3 (La. 1993).

. Parole eligibility is determined by the sentence. Bosworth, 627 So.2d at 631.

. The 1972 amendment to LSA-C.Cr.P. art. 817 has been held to be unconstitutional only insofar as it purported to bestow on the jury the authority to restrict the commutation of a sentence. State v. Varice, 292 So.2d 703, 707 (La.1974).

. Article 817 was again' amended in 1973 by La. Act No. 125, § 1. This amendment changed Article 81'7 to provide in its entirety as follows: “Any qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding.” Section 2 of La. Act No. 125 of 1973 provided:
This Act shall not apply to the prosecution and trial for any crime committed before the effective date of this Act. Qualification of verdicts for crimes committed before that time shall be governed by the law existing at the time the crime was committed.

.LSA-R.S. 15:574.13(A) provides:
The provisions of this Part [pertaining to parole] shall apply to all persons who, on July 31, 1968, are sentenced to or serving prison sentences, are on parole, or are eligible to be placed on parole, with the same force and effect as if it had been in operation at the time such persons were sentenced, imprisoned, placed on parole, or became eligible to be placed on parole, as the case may be provided that prisoners on parole prior to July 31, 1968 shall continue on parole subject to the provisions of this Part.

. The power and authority to commute is constitutionally vested in the governor. LSA-Const. art. IV, § 5(E), formerly LSA-Const. art. V, § 10. The power to commute sentences is incidental and akin to the power to pardon. Vance, 292 So.2d at 707. The pardoning power has been held to be an executive function which cannot be restricted by the legislature. Id. The governor is afforded discretion with respect to commutation decisions. Bosworth, 627 So.2d at 633. A prisoner has neither a constitutional nor an inherent right to commutation of his sentence. Id. An application for commutation is nothing more than an appeal for clemency and a felon's expectation that his lawful sentence will be commuted is simply a unilateral hope. Bosworth, 627 So.2d at 633 (citing Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465-66, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981)).

. Under the facts of this case, we find it unnecessary to determine whether LSA-R.S. 15:574.4(B), as applied retroactively by LSA-R.S. 15:574.13, violates the ex post facto prohibitions in the United States and Louisiana Constitutions.

. It is not until the prisoner removes the impediments) to parole consideration that he or she joins the pool of other qualifying prisoners entitled to be considered by the board for conditional early release on parole. See Bosworth, 627 So.2d at 633.