825 So.2d 1245 (2002)
Elton Wayne MADISON
v.
Kelly WARD, Warden, and Richard Stalder, Secretary.
No. 2000 CA 2842.
Court of Appeal of Louisiana, First Circuit.
July 3, 2002.
*1247 Elton Wayne Madison, Homer, Plaintiff/Appellant, Pro Se.
Debra Rutledge, Baton Rouge, Counsel for Defendants/Appellees, Kelly Ward, Warden, and Richard Stalder, Secretary.
Before: CARTER, C.J., FOIL, GONZALES, WHIPPLE, FOGG, PARRO, FITZSIMMONS, KUHN, GUIDRY, PETTIGREW, DOWNING, *1248 LANIER, and CIACCIO, JJ.[1]
GONZALES, J.
Inmate Elton Madison appeals a judgment dismissing his petition for judicial review of a decision in an administrative remedy procedure. At issue is whether this matter is properly before us on appeal. For the reasons expressed, we dismiss the appeal in part and remand in part with instructions to the district court.

FACTUAL AND PROCEDURAL BACKGROUND
Mr. Madison was arrested in March 1996, and charged with armed robbery. In October 1997, he pled guilty to simple robbery. On March 25, 1998, he was sentenced by the Twenty-Sixth Judicial District Court (26th JDC) in Bossier Parish to serve seven years imprisonment at hard labor without diminution of sentence.
Mr. Madison filed an administrative remedy procedure alleging the Department of Public Safety and Corrections (DPSC) was illegally denying him eligibility for good time. After his administrative remedies were exhausted, Mr. Madison filed a pleading in the Nineteenth Judicial District Court (19th JDC) entitled, "Writ of Habeas Corpus," to which he ultimately appended a petition for judicial review when the writ was returned to him for compliance with local court rules.
The essence of Mr. Madison's appeal is that the prohibition against good time in his sentence is illegal because the sentencing court failed to stipulate for the record that he was being sentenced under La. C.Cr.P. art. 890.1,[2] and that his equal protection rights were violated because a co-defendant received the same sentence but allegedly received good time and has been released. The administrative record submitted to this court includes the district court minutes from the 26th JDC revealing that Mr. Madison and his two co-defendants were each sentenced to serve seven years imprisonment at hard labor, with credit for time served, but no eligibility for good time. Portions of the sentencing transcript included with the administrative record detail some of the sentencing judge's reasons for the sentence imposed and clearly indicate Mr. Madison was sentenced to seven years "without any type of good time or diminution of sentence." The sentencing judge also noted that simple robbery is a crime of violence. Mr. Madison did not raise his purported equal protection argument in the course of the administrative proceeding, and there is no evidence in the record before us to indicate the DPSC treated him any differently than one of his co-defendants.
After a hearing in July 2000, a commissioner for the 19th JDC recommended dismissal of Mr. Madison's petition without addressing his equal protection argument. The district court agreed with the recommendation and signed a judgment dismissing the petition with prejudice on September 13, 2000. This appeal followed.

WRIT OF HABEAS CORPUS
Mr. Madison chose to raise the instant challenge to his sentence and to the DPSC's interpretation of that sentence by *1249 writ of habeas corpus. The appropriate use of this historic device is widely misunderstood and frequently misapplied. Habeas corpus is a writ commanding a person who has another in his custody to produce him before the court and to state the authority for the custody. La. Const. art. I, § 21; La.C.Cr.P. art. 351; La. C.C.P. art. 3821. The appropriate classification of this writ continues to confound courts and petitioners alike. Generally, habeas corpus is an action independent of the legal proceeding under which the detention is sought to be justified. 39 C.J.S. Habeas Corpus, §§ 3, 6.
Our jurisprudence has recognized that habeas proceedings are unique hybrids that have both civil and criminal legal characteristics. See State ex rel. Tassin v. Whitley, 602 So.2d 721, 722 (La. 1992). Both the civil and criminal codes of procedure provide for habeas relief. As these procedures differ significantly, it is essential that the individual habeas proceeding be appropriately classified.
In State ex rel. Ballett v. Gremillion, 168 So.2d 270 (La.App. 3 Cir.) (per curiam), writ refused, 247 La. 5, 169 So.2d 392 (1964), the court held that the civil or criminal nature of a habeas proceeding was dictated by the civil or criminal origin of the confinement or custody that inspired the filing of the writ. In so concluding, the court observed that the official reporter's introduction to the Code of Civil Procedure's title on extraordinary remedies notes that "R.S. 15:113 through 15:141,[3] which govern the issuance of habeas corpus in criminal matters, are not affected by the provisions of this Title;" further, the preliminary statement to the Code of Civil Procedure chapter relative to habeas corpus limits the applicability of that chapter to civil proceedings "such as cases involving custody of children or civil commitment" and expressly states that "[t]he articles in the Code of Criminal Procedure regulate the use of the writ where the applicant is confined as a result of a criminal proceeding against him." Ballett, 168 So.2d at 271. Moreover, La. C.Cr.P. art. 351 specifically states that custody means "detention or confinement as a result of or incidental to an instituted or anticipated criminal proceeding." We thus conclude that, where the custody being challenged by a writ of habeas corpus arose from a criminal proceeding, the procedures set forth in La.C.Cr.P. art. 351 et seq. apply.[4]
Louisiana Code of Criminal Procedure article 369 provides there shall be no appeal *1250 from a judgment granting or refusing to grant release upon a petition for a writ of habeas corpus. Thus, if Mr. Madison's complaint were one that could properly have been raised through post-conviction habeas, the pleading should have been filed in the criminal division of the 19th JDC and handled as a criminal matter under that court's original jurisdiction;[5] it would be reviewed by this court only by discretionary supervisory writ.[6]
This allegation of an illegal sentence was not, however, a proper subject for habeas relief. In the criminal context, habeas corpus usually applies to pre-conviction complaints concerning custody and is not the proper procedural device for petitioners who may file applications for post-conviction relief.[7] In fact, La.C.Cr.P. art. 351 specifically states, "The provisions of this title are not available to persons entitled to file an application for post *1251 conviction relief ...." Moreover, the writ of habeas corpus may not be used for complaints challenging either a conviction or sentence, for which the legislature has provided other procedural vehicles, such as the motion for reconsideration of sentence, appeal, and the motion to correct an illegal sentence. La.C.Cr.P. arts. 881.1, 912, and 882. Mr. Madison's attempt to raise his complaint regarding the illegality of his sentence through this procedural vehicle was clearly inappropriate and would not, in this procedural posture, be subject to this court's appellate jurisdiction.

CORRECTIONS ADMINISTRATIVE REMEDY PROCEDURE
Although Mr. Madison attempted to raise his challenge by writ of habeas corpus, the district court returned his pleading to him with instructions to re-file it as a petition for judicial review of a Corrections Administrative Remedy Procedure (CARP) under La. R.S 15:1171-1179.
Louisiana Revised Statute 15:1171(B) grants authority to the DPSC and to each sheriff to adopt administrative remedy procedures in compliance with federal law to receive, hear, and dispose of all offender "complaints and grievances[.]" The statute further provides:
Such complaints and grievances include but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized *1252 by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Such administrative procedures, when promulgated, shall provide the exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows.[8]
CARP is thus currently the exclusive remedy by which an offender may challenge the DPSC's time computations, relative, for instance, to good time and credit for time served.[9]
CARP has, since its inception, worked in conjunction with the Administrative Procedure Act (La. R.S. 49:950 et seq.) (APA). Of specific interest in the context of our decision today, La. R.S. 15:1177 provided for many years that an offender aggrieved by the outcome of a CARP proceeding could petition the district court for judicial review of that proceeding "in the manner provided by R.S. 49:964." Louisiana Revised Statute 49:964 allowed "a person who is aggrieved by a final decision or order in an adjudication proceeding" subject to the APA to file a petition for judicial review in the appropriate district court within thirty days of the agency decision; after review of the agency record, the district court could affirm the agency decision, remand for further proceedings, or reverse or modify the decision based on one of several enumerated bases. It is well settled that, when reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. See Blair v. Stalder, 99-1860 (La.App. 1 Cir. 1/31/01), 798 So.2d 132, 139, and cases cited therein.
After this initial appellate review in the district court, La. R.S. 49:965 provided (and still provides) that "[a]n aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal." Originally, then, an offender pursuing a remedy through CARP could appeal the district court's decision to the court of appeala second appeal of right. See State ex rel. Armistead v. Phelps, 365 So.2d 468, 469-470 (La.1978).
However, in 1997, the legislature amended this statutory scheme. By 1997 La. Acts, No. 1216, La. R.S. 15:1177 was amended to delete the above-quoted reference to the APA and to provide instead a detailed description of the judicial review process available under CARP; this process is substantially similar to that provided in La. R.S. 49:964. Further, the legislature amended La. R.S. 49:964(A)(1) to expressly exclude judicial review of CARP proceedings, 1997 La. Acts, No. 1216. In Victorian v. Stalder, 99-2260 (La.App. 1 Cir. 7/14/00), 770 So.2d 382, 384, this court recognized that because of these amendments, CARP, rather than the APA, applied to judicial review of a prisoner's disciplinary proceeding.
Significantly, when the legislature chose to sever the relationship between CARP *1253 and the APA, it did not include in the CARP amendments any equivalent to La. R.S. 49:965; in essence, the 1997 amendments deleted from CARP proceedings the right to appeal an adverse decision of the district court to the court of appeal. In Lightfoot v. Stalder, 00-1120 (La.App. 1 Cir. 6/22/01), 808 So.2d 710, 718, this court stated that, pursuant to the 1997 actions of the legislature, there was no "authority to appeal from the district court, the first level of appellate review, to this court as a matter of right" and held that "the APA no longer applies to review of any prisoner suits that now must be filed under CARP, unless said suits involve a vested property right and/or a liberty interest." Thus, under Lightfoot, a CARP claimant not raising a claim involving a vested property right and/or liberty interest would be entitled only to seek a supervisory writ from an adverse district court decision rendered under its appellate jurisdiction.
Conversely, review of a district court decision rendered under its original jurisdiction on a cognizable vested property right or liberty interest claim would have fallen under this court's appellate jurisdiction. In Pope, 792 So.2d at 720 n. 15, the court specifically stated it was not addressing the constitutionality of CARP "with regard to actions filed by `offenders' that are not tort actions." However, the Pope court did state that "the Legislature cannot, by legislative act, divest the district courts of the original jurisdiction fixed by the Constitution in those civil matters, such as tort actions, in which the Constitution does not otherwise provide for original jurisdiction in other tribunals." Pope, 792 So.2d at 720 (Emphasis added and footnote omitted).[10]
Article V, § 16(A) of the Louisiana Constitution of 1974 confers original jurisdiction on the district court over all "civil matters." "Civil matters" are those that have been traditionally adjudicated in the district courts, such as the adjudication of disputes between private parties resulting in money judgments affecting only those parties. McGehee v. City/Parish of East Baton Rouge, 00-1058 (La.App. 1 Cir. 9/12/01), 809 So.2d 258, 260. However, it is also well settled that a claim of deprivation of a constitutionally protected right is a traditional civil matter as well. McGehee v. City/Parish of East Baton Rouge, 809 So.2d at 261.
Recently, the legislature enacted 2002 La. Acts, 1st Ex.Sess., No. 89 (Act 89), which addresses a variety of matters pertinent to prisoner litigation. Of primary significance herein is an amendment to La. R.S. 15:1177, which now provides that "[a]n aggrieved party may appeal a final judgment of the district court to the appropriate court of appeal." Act 89 was effective April 18, 2002. We must determine if the amendment to La. R.S. 15:1177, restoring appellate jurisdiction to the appropriate court of appeal in a claim that is not a "civil matter," should be applied retroactively.
Louisiana Civil Code article 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively *1254 and retroactively, unless there is a legislative expression to the contrary.[11]
A substantive law is one that creates, defines, destroys, or otherwise regulates rights, liabilities, causes of action, or legal duties. As explained in King v. State ex rel. Louisiana Department of Public Safety and Corrections, 98-2910 (La.App. 1 Cir. 2/18/00), 754 So.2d 1119, 1122, "substantive laws either establish new rules, rights, and duties or change existing ones." In contrast, King, 754 So.2d at 1122, goes on to explain:
Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws.... In other words, procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status. Curative acts are those that remove past disabilities in order to effect the true intent of the legislature.
Interpretive laws, on the other hand, merely establish the meaning the statute had from the time of its enactment. (Citations omitted).
Under this analysis, that portion of Act 89 adding La. R.S. 15:1177(A)(10), providing for appeal of a final judgment of the district court, is clearly a method of "processing, administering, or determining rights" asserted through the CARP mechanism. As such, it is a procedural amendment and has retroactive application.
Thus, given Pope's ruling that the district court cannot be divested of original jurisdiction to hear tort suits, Lightfoot's implication that claims involving a vested property right or a liberty interest should not be subject to CARP, and the most recent statement of legislative will found in Act 89, we conclude that the district court retains original jurisdiction, and this court has appellate jurisdiction, in tort suits and other "civil matters," including claims involving unconstitutional deprivations of vested property rights, liberty interests, and other properly alleged violations of constitutionally protected rights. Included in this category would be disciplinary actions where the punishment involves the forfeiture of accrued good time (a liberty interest) or the unconstitutional deprivation of property (a vested property right). In contrast to these "civil matters," CARP would be the exclusive remedy for disciplinary actions in which prospective good time is forfeited or where the punishment involves a condition of confinement; under the amendments, appellate jurisdiction for these claims rests sequentially with the district court and the court of appeal.
A prisoner claiming he is entitled to immediate release under La.C.Cr.P. art. 362 (on grounds other than those relative to time computations) would raise his challenge by writ of habeas corpus under the criminal jurisdiction of the appropriate district court. See La.C.Cr.P. art. 352: La. R.S. 15:571.15.[12] The district court's decision would be subject only to review on supervisory writs by the appellate court.
*1255 A prisoner alleging an error in time computation must pursue his claim through CARP, with appellate review first at the district court and then with this court.[13] Mr. Madison's petition for judicial review challenges the DPSC's denial of good time, which at first glance appears to raise a question for disposition under CARP. However, the only issue Mr. Madison raised to the DPSC was that his sentence was illegal, because the sentencing judge did not specifically invoke La. C.Cr.P. art. 890.1. This was not a claim appropriate to disposition through CARP, because the DPSC had no power to alter Mr. Madison's sentence.[14] Instead, this claim should have been raised either through timely motion for reconsideration of sentence directed to the sentencing court (La.C.Cr.P. art. 881.1), timely direct appeal of that sentence to the appropriate court of appeal, or at any time by a motion to correct illegal sentence (La.C.Cr.P. art. 882(A)) directed to the sentencing court. The record does not indicate whether Mr. Madison attempted to challenge his sentence through any of the appropriate, available, procedural vehicles. We further observe that, because Mr. Madison was sentenced in Bossier Parish, neither the 19th JDC nor this court would have had jurisdiction over such a challenge.
Mr. Madison's second claimthat the DPSC denied him equal protection by treating him differently than one of his co-defendants was not raised in the administrative proceeding. Instead, this claim was raised for the first time as part of Mr. Madison's petition for judicial review. In this procedural posture, the district court was acting in its appellate capacity and appropriately declined to consider the equal protection claim which was not addressed in the administrative proceeding; this claim should be dismissed without prejudice.
An alleged violation of a constitutionally protected right should be raised as a separate suit invoking the district court's original jurisdiction. Pursuant to La. R.S. 15:1188 (relative to judicial screening of prisoner filings), such a claim in a separate suit should be initially screened by the district court to determine if, indeed, it *1256 raises a cognizable constitutional claim. See Tauzier v. Cain, 96-1934 (La.App. 1 Cir. 6/20/97), 696 So.2d 650. If it does, the district court would address that claim under its original jurisdiction, with review of its final decision by appeal to this court.[15] If the pleading does not state a constitutional claim, but is rather a grievance or complaint against the DPSC, the district court, pursuant to La. R.S. 15:1178,[16] should screen the proceedings.

CONCLUSION
For these reasons, the appeal is dismissed insofar as Mr. Madison complains that his sentence is illegal, because this court, like the 19th JDC, is without jurisdiction to entertain it. As to the purported constitutional claim, the case is remanded to the 19th JDC in its appellate capacity, with instructions to dismiss that claim without prejudice.
APPEAL DISMISSED IN PART; REMANDED IN PART WITH INSTRUCTIONS.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), and Hon. Philip C. Ciaccio, Judge (retired), are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] Louisiana Code of Criminal Procedure article 890.1 provided at the pertinent time, that if a person is convicted of or pleads guilty to a crime of violence as defined in La. R.S. 14:2(13) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior. Simple robbery is included among the crimes of violence enumerated in La. R.S. 14:2(13).
[3] The habeas statutes formerly contained in Title 15 of the Revised Statutes were incorporated into Title IX of the Code of Criminal Procedure at the time of its adoption in 1966.
[4] We note La.C.Cr.P. art. 352 provides that venue for criminal habeas proceedings is the parish in which the person is in custody. However, La. R.S. 15:571.15 provides:

Venue in any action in which an individual committed to the Department of Public Safety and Corrections contests the computation of his sentence or sentences, discharge, good time dates, or any action concerning parole shall be in the parish of East Baton Rouge. Venue in a suit contesting the actions of the Board of Parole shall be controlled by this Part and R.S. 15:574.2 and 574.11 and not by the Code of Criminal Procedure, Title XXXI-A, Post Conviction Relief, or Title IX, Habeas Corpus, regardless of the captioned pleadings stating the contrary. (Footnotes omitted).
In State ex rel. Bartie v. State, 501 So.2d 260, 264 (La.App. 1 Cir.1986), this court noted that pre-conviction habeas venue was the parish of custody, while venue for post-conviction relief was the parish in which the person was convicted, and observed that a "post-conviction habeas corpus" does not fit in either category. This court concluded that a "post-conviction habeas corpus making the necessary allegations... qualifies as `any action' subject to the special venue requirements of La. R.S. 15:571.15[.]" Bartie, 501 So.2d at 265. The opinion further notes the 19th JDC has specially appointed commissioners to handle such complaints. Bartie has been cited with approval in the context of "criminal postconviction habeas corpus claim[s]" by the Louisiana Supreme Court in a number of cases. See, e.g., State ex rel. Gates v. State, 97-2302 (La.10/3/97), 701 So.2d 185 (emphasis added).
[5] Article V, § 16(A) of the Louisiana Constitution of 1974 provides that, except as otherwise provided, a district court shall have original jurisdiction in all civil and criminal matters.
[6] We are aware of jurisprudence from this circuit in which challenges to the denial of a writ of habeas corpus have been handled on appeal. However, recognizing the clear mandate of La.C.Cr.P. art. 369, we hereby hold that those cases are without precedential effect to the extent they considered habeas claims on appeal rather than under this court's supervisory jurisdiction. See, Bartie, 501 So.2d at 265 ("A judgment refusing to grant release upon a petition for a writ of post-conviction habeas corpus is not appealable").
[7] Subsequent to Bartie, which involved an inmate challenging the DPSC's decision not to give him credit for time served while in a halfway house or on parole, a number of cases have arisen in which this court has identified circumstances in which post-conviction relief could be sought by writ of habeas corpus. Some of these cases involved challenges to actions of the Louisiana Board of Parole.

Louisiana Revised Statute 15:574.11 provides:
A. Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint, and the granting, conditions, or revocation of parole rest in the discretion of the Board of Parole. No prisoner or parolee shall have a right of appeal from a decision of the board regarding release or deferment of release on parole, the imposition or modification of authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or the revocation or reconsideration of revocation of parole, except for the denial of a revocation hearing under R.S. 15:574.9.
B. Venue in any action in which an individual committed to the Department of Public Safety and Corrections contests any action of the board shall be in the parish of East Baton Rouge. Venue in a suit contesting the actions of the board shall be controlled by this Part and R.S. 15:571.15 and not the Code of Criminal Procedure, Title XXXI-A, Post Conviction Relief, or Title IX, Habeas Corpus, regardless of the captioned pleadings stating the contrary. (Footnotes omitted).
Louisiana Revised Statute 15:574.9 provides, in pertinent part, the hearing procedure for parole revocations. The text of La. R.S. 15:571.15 is quoted in footnote 4 of this opinion.
Thus far, the jurisprudence has not satisfactorily addressed the appropriate procedure for challenges to actions of the Board of Parole. We find the clear meaning of La. R.S. 15:574.11(A) is that there shall be no appeal of decisions of the board unless the procedural due process protections specifically afforded by the hearing provisions of La. R.S. 15:574.9 are violated. See Smith v. Dunn, 263 La. 599, 268 So.2d 670, 671 (1972). Thus, for example, challenges to the board's denial of parole, revocation of parole, refusal to consider an inmate for parole, or imposition of parole conditions would not be subject to appeal. This statement is consistent with Bosworth v. Whitley, 627 So.2d 629, 633 (La. 1993), which cites United States Supreme Court decisions holding that the existence of a parole system does not by itself give rise to a constitutionally protected liberty interest and that laws or regulations providing that a parole board "may" release an inmate on parole have not been found to give rise to that interest; Bosworth goes on to say that "the Parole Board has full discretion when passing on applications for early release." Bosworth, 627 So.2d at 633.
Only where it is alleged that the hearing provisions of La. R.S. 15:574.9 were violated is appeal allowed. Louisiana Revised Statute 15:574.11 does not, however, specify how such appeal is to be accomplished. Smith, 268 So.2d at 671-672, stated that the Board of Parole is not subject to application of the Louisiana Administrative Procedure Act. See also Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863 (La.App. 1 Cir. 12/20/00), 774 So.2d 1193, 1197 n. 5, aff'd, in part and vacated in part on other grds, 01-0185 (La.10/16/01), 797 So.2d 656.
Nevertheless, the Louisiana Constitution of 1974 provides that "[a] district court shall have appellate jurisdiction as provided by law." La. Const. Art. V, § 16(B). In Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 202-203 (La.1987), the court observed that "[b]y definition, appellate jurisdiction is the power to review the judgment of another tribunal. Generally, a court's review of an administrative tribunal's action is considered functionally to be an exercise of its appellate review jurisdiction." We conclude that La. R.S. 15:574.11, with its provision for appeal of board actions in a limited, specified circumstance, together with its provision for venue in the 19th JDC for any action contesting an action of the parole board, is a statutory grant of appellate jurisdiction to the 19th JDC to review decisions of the parole board where a denial of a revocation hearing under La. R.S. 15:574.9 is alleged.
Thus, pleadings challenging actions of the parole board other than failure to act in accordance with La. R.S. 15:574.9, whether styled as writs of habeas corpus or captioned in some other fashion, should be dismissed by the district court; the district court's order of dismissal would be reviewable on writs by this court under its supervisory jurisdiction. Pleadings alleging a denial of a revocation hearing under La. R.S. 15:574.9, however styled, should be reviewed on the merits by the district court acting in its appellate capacity; the district court's affirmation, modification, or reversal of the board's action would likewise be reviewable under this court's supervisory jurisdiction.
Jurisprudence from this circuit considering challenges to parole board actions in a manner other than that outlined above is without precedential effect to the extent it is inconsistent with the procedure we adopt today.
[8] We note Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713, 721, in which the court held that CARP violates Article V, § 16(A) of the Louisiana Constitution of 1974 to the extent it permits the DPSC to exercise original jurisdiction over tort suits.
[9] We interpret the phrase in La. R.S. 15:1171"even though urged as a writ of habeas corpus"as modifying the enumerated term "time computations" that immediately precedes it. This reference to habeas is an explanatory clause rendered necessary by inmates' frequent misapplication of the writ of habeas corpus.
[10] As noted above, La. R.S. 15:1171(B) provides that the DPSC or sheriff may adopt administrative remedy procedures for handling "all complaints and grievances" including "all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law[.]" Ordinary civil matters seeking injunctions, declaratory, judgments, and causes or claims raising attacks on the facial constitutionality of statutes are matters cognizable in district courts under their original jurisdiction and would likewise be jurisdictional prerogatives that cannot be divested by mere legislative fiat.
[11] Louisiana Revised Statute 1:2 provides that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated." The jurisprudence has concluded that this statute does not conflict with La. C.C. art. 6 because La. R.S. 1:2 "has been limited to apply only to substantive and not procedural or interpretive legislation and the two provisions are therefore generally construed as being co-extensive." Morial v. Smith & Wesson Corporation, 00-1132 (La.4/3/01), 785 So.2d 1, 10, cert. denied, ___ U.S. ___, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001), and citations therein.
[12] In a limited number of cases, jurisdiction and venue may be appropriate in a court other than the district court. See, e.g. City of Baton Rouge v. Ross, 372 So.2d 552 (La. 1978).
[13] We are aware that these recent rulings, along with this decision, will require the district court to adjust some of its methodology. Where the district court is sitting as an appellate court, it must adopt the language of an appellate court. For instance, a decision rendered after review of a petition for judicial review will cause less confusion if it uses dispositive language appropriate to an appellate court; e.g. the DPSC's administrative decision is "affirmed," "reversed," "remanded," etc. See La. C.C.P. art.2082; La. R.S. 15:1177A(4), (8) & (9).
[14] Mr. Madison committed his crime in 1996, and, therefore, the provisions of La.C.Cr.P. art. 890.1 in effect at that time must be applied to his claims concerning his sentence. See State v. Francis, 97-0201 (La.App. 1 Cir. 2/20/98), 709 So.2d 834, 841, writs denied, 98-1054 (La.5/8/98), 719 So.2d 57 and 98-0887 (La.9/4/98), 723 So.2d 961. Had Mr. Madison's crime been committed after August 15, 1997, however, his claims would be appropriate for disposition under CARP. In State v. Allen, 99-2898 (La.6/16/00), 762 So.2d 615, 616 (per curiam), the supreme court stated that DPSC has authority under La. R.S. 15:571.3(C)(1)(q) to determine good-time eligibility without a designation by the sentencing court under La.C.Cr.P. art. 890.1, if the crime is enumerated as a crime of violence under La. R.S. 14:2(13). This case interpreted the provisions of La.C.Cr.P. art. 890.1, as amended by 1997 La. Acts, No. 697, effective August 15, 1997, which added the words, "or enumerated" to the statute. Simple robbery is one of the crimes enumerated as a crime of violence. Therefore, for a crime committed after August 15, 1997, a claim such as Mr. Madison's would be directed to DPSC and could be handled under CARP, with review first in the 19th JDC and then in this court.
[15] We note that Pope spoke with approval of the judicial screening provisions of the Prison Litigation Reform Act (La. R.S. 15:1181-90) and observed that "the district court in the judicial screening stage is acting as a trial court, rather than in judicial review of the determination of another tribunal." Pope, 792 So.2d at 720 n. 16. Louisiana Revised Statute 15:1178 provides for judicial screening of petitions for judicial review under CARP; Louisiana Revised Statute 15:1188 mandates screening in "a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

Also, as noted above, Mr. Madison initially raised his claims in the district court by writ of habeas corpus. Apparently pursuant to Rule XII of the 19th JDC, his writ was returned to him and he was instructed to file his claim under CARP. Rule XII provides that the court shall furnish the necessary forms to inmates seeking to file a "lawsuit or suit for judicial review." Section 3 of the rule provides:
Any inmate in the custody of the Louisiana Department of Public Safety and Corrections must comply with the Administrative Remedy Procedure established by the Department before filing suit when said suit is subject to the Administrative Remedy Procedure. This requirement is established by LSA-R.S. 15:1171 et seq.
Any suit filed by or on behalf of an inmate must show compliance with the Administrative Remedy Procedure by having attached to it a copy of either
(A) The Appeal decision of the Secretary of the Louisiana Department of Public Safety and Corrections or the Warden of the Institution for any Prison Disciplinary matters complained of by the inmate; or
(B) The decision of the Secretary regarding denial of a publication to the petitioner; or
(C) The decision of the Warden regarding the petitioner's claim for lost or stolen property; or
(D) The decision of the Secretary regarding any other claim made by petitioner.
The provision of this Section (3) shall not apply to:
(1) Appeals of Judicial Decisions
(2) Pending criminal matters
(3) Habeas Corpus proceedings attacking the petitioner's conviction
(4) Appeals from the decisions of the Louisiana Parole Board
Any petition or writing not in compliance with this section shall not be filed by the Clerk of Court but shall be returned to the sender. (Emphasis added).
Certainly the 19th JDC is entitled to provide forms to inmates to assist the clerk's office and other court personnel in properly handling inmate actions. However, Rule XII, § 3 expressly applies only to suits "subject to" CARP. Any current implementation of this rule in conflict with the Pope case, this decision, and the recent amendments to the statutory scheme should be discontinued. We also note the recent adoption of uniform rules for the district courts and do not address the effect of such on the implementation of Rule XII.
[16] See La. R.S. 15:1172(C) as amended by Act 89.