CHARLES N. SIMON, JR.
v.
RICHARD L. STALDER, SECRETARY LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
No. 2008 CA 0930.
Court of Appeals of Louisiana, First Circuit.
October 31, 2008.
NOT DESIGNATED FOR PUBLICATION
CHARLES N. SIMON, Jr., Plaintiff-Appellant In Proper Person.
WILLIAM KLINE, Attorney for Defendant-Appellee Richard L. Stalder, Secretary, Louisiana Department of Public, Safety and Corrections.
Before: PARRO, McCLENDON, and WELCH, JJ.
PARRO, J.
Charles N. Simon, Jr., an inmate in the custody of the Louisiana Department of Public Safety and Corrections (DPSC) at Allen Correctional Institute, appeals a judgment dismissing his petition for an emergency writ of habeas corpus. We affirm the judgment and render this opinion in accordance with Rule 2-16.2(5) and (6) of the Uniform Rules of Louisiana Courts of Appeal.
Simon filed this claim for emergency habeas relief in the Nineteenth Judicial District Court (19th JDC), claiming that DPSC's application of the 1995 amendment of LSA-R.S. 15:571.4 to his accumulation of good-time credit constituted an unconstitutional ex post facto law and impairment of the obligation of contracts and therefore, he was entitled to immediate release. He further claimed that because he was seeking habeas corpus relief, he was not required to exhaust his administrative remedies before filing suit, nor was his suit subject to the screening requirements of LSA-R.S. 15:1178 and 1188. Simon alleged that in September 1992, he was sentenced to twenty years at hard labor pursuant to a plea agreement. That agreement included his eligibility for good-time credit in accordance with Act 138, the good-time law in effect when he entered into the plea agreement.[1] In December 1993, Simon opted to earn double good-time credit in lieu of incentive wages.[2] Louisiana Revised Statute 15:571.4(B)(3) was amended in 1995 by Act 980,[3] which allowed DPSC to sanction inmates with the forfeiture of up to 180 days of good-time credit for certain violations of its rules. Before this amendment, forfeiture was limited to the amount of good-time credit the inmate had earned during the month, a maximum of 30 days. Simon alleged that since 1995, DPSC had applied the amended forfeiture provisions to his numerous disciplinary infractions, resulting in the improper forfeiture of 1,814 days of accumulated good-time credit. He claimed that had these unconstitutional penalties not been imposed, he would already have been released from custody. Simon claimed the application of the amended statute to his prison sentence was a breach of his plea agreement and his selection of the option of receiving double good-time credit in lieu of incentive wages, thus impairing the obligation of contracts. He further claimed that as applied to him, it was also an ex post facto law, because the removal of good-time credit pursuant to the later-enacted law disadvantaged him by altering the consequences of a crime already completed and changing the quantum of his punishment.
Despite Simon's assertion that his petition was not subject to pre-screening by a commissioner, his claims were assigned to the commissioner for review,[4] who determined that because they were based on the alleged unconstitutionality of a statute that had never been declared unconstitutional, his claims did not meet this court's criteria for classification as a true writ of habeas corpus. See Madison v. Ward, 00-2842 (La. App. 1st Cir. 7/3/02), 825 So.2d 1245, 1251 (en banc); Bernard v. Louisiana Dep't of Pub. Safety and Corr., 00-1912 (La. App. 1st Cir. 9/20/02), 843 So.2d 413, 414 (on rehearing), writ denied, 02-2613 (La. 1/9/04), 862 So.2d 975; Ferrington v. Louisiana Bd. of Parole, 03-2093 (La. App. 1st Cir. 6/25/04), 886 So.2d 455, 457-58. The commissioner further concluded that because Simon's petition alleged an error in time computation, he was required to exhaust administrative remedies before filing a petition for judicial review. Madison, 825 So.2d at 1255. After examining the facts and the law applicable to Simon's claims, the commissioner recommended that his petition be dismissed for failure to state a cause of action for habeas relief and for lack of subject matter jurisdiction due to his failure to exhaust administrative remedies. On October 22, 2007, the district court signed a judgment in conformity with that recommendation, and this appeal followed.
We have examined the record and agree with the well-written analysis of the facts and law set out in the commissioner's screening report, which was adopted by the district court as its reasons, a copy of which is attached. The findings of fact and conclusions of law in that report adequately explain the judgment, and we find no legal error in the district court's judgment. Accordingly, we affirm that judgment and assess all costs of this appeal to Simon.
AFFIRMED.

COMMISSIONER'S SCREENING REPORT
The Petitioner, an inmate in the custody of the Department of Public Safety and Corrections, filed this suit as a claim for "emergency habeas relief', rather than as an appeal of an identified disciplinary appeal or ARP grievance, as required by R.S. 15:1171 et seq for this Court to have jurisdiction. He argues that an inmate overdue for release is not required to exhaust administrative remedies before filing a habeas complaint and that a petition for habeas corpus is not subject to screening pursuant to R.S. 15:1178 and R.S. 15:1188.[1] While these assumptions are true, that assertion presumes a fact not found herein and that is that the petition presents a true habeas claimone involving illegality of custody. Here, the Petitioner asserts the unconstitutionality of the 1995 amendment of R.S. 15:571.4 as it applies to one sentenced prior to the amendment. However, the First Circuit noted that it has consistently held that when an inmate challenges his custody based on the unconstitutionality of a statute that has never been declared unconstitutional, the triggering event for a habeas corpus claim, i.e., the application of a statute declared to be unconstitutional, has not occurred and the inmate's claim does not meet the criteria for classification as a true writ of habeas corpus.[2]
Based on the facts alleged, I find that this petition does not present an actual habeas complaint, as stated hereinafter, and further, that even if the CARP and PLRA do not apply which I do not suggestthe matter may be dismissed under the Court's authority to find no cause of action stated pursuant to Art. 927 C.C.P.[3]
For reasons stated below, I suggest dismissal of this suit for failure to state a cause of action for habeas relief and lack of subject matter for failure to exhaust administrative remedies.
This report is issued pursuant to screening requirements for the Court's de novo consideration and final adjudication without service on the Defendant.

ANALYSIS OF THE FACTS AND LAW
The Petitioner states that he was sentenced to 20 years in the penitentiary in September, 1992.[4] It is apparent from the date that the Petitioner has not served his full sentence, and according to his record attached to his petition, he is due for good time release in 2008. That record shows that the Petitioner would have been due for good time release in 2001 had he earned all and forfeited none of the good time credits for which he was eligible from 1992. However, the Petitioner, over the past 15 years has, according to his records, forfeited significant good time credits for numerous prison rule violations. While the Petitioner does not deny the rule violations, he asserts that the Department had no authoritybecause of the ex post facto prohibitionto order the forfeiture of more than 30 days of good time in any one month for a rule violation, when in fact, at times, more than 30 days in one month or for one rule violation was forfeited, pursuant to the 1995 amendment to R.S. 15:571.4. The 1995 amendment increased the authority of the Department to forfeit up to 180 days of good time earned for disciplinary violations.
The Department has promulgated disciplinary rules that allow the appeal of each such forfeiture through the administration and to this Court, if timely filed and pursued. It is unknown whether the Petitioner appealed any or all of the hundreds of prior violations, but a previous suit in 2005 also involved a request to restore all of his good time forfeited for disciplinary violations based on an alleged impulse disorder that resulted in misconduct[5]. The forfeitures which he now contests began in 1992almost 15 years ago, but he has waited until he accumulated a Sizeable good time loss that he now asserts makes him overdue for releasethus, this habeas action.

EX POST FACTO CLAIM
His complaint is that the application of the 1995 increased good time forfeiture statute is an ex post facto law and thus, he is entitled to immediate release. According to the attachments that he submitted with his pleadings, this Petitioner has one of the worst disciplinary records the Court has seen in more than 10 yearsalmost 600 disciplinary rule violations on record over the past 15 years.[6]
As stated, this suit is not this Petitioner's first habeas complaint seeking to overturn the prior prison disciplinary decisions between 1995 and the present.[7] By this application, the Petitioner again seeks to have this Court overturn dozens, if not hundreds, of prior unidentified disciplinary decisions and restore the more than 1,500 days of good time that he alleges was illegally forfeited under the 1995 amendment. In order to circumvent the statutory law and Department rules that require timely and separate exhaustion of disciplinary and/or administrative grievances through the Department's procedures, the Petitioner asserts this Maim asking for habeas relief, However, there is a contingency to the illegality of the Petitioner's incarcerationand that is, the Petitioner must first have all of his good time restored. IN other words, if good time previously forfeited is restored first, then he will be overdue for release on good time parole.
However, this claim, as filed, must be dismissed for two reasons: 1) failure to state a cause of action for habeas relief (illegal custody) and 2) failure to timely exhaust remedies available in each disciplinary decision and/or to exhaust the issue of whether he is entitled to restoration of certain good time forfeitures for reasons he could not raise previously and individually. Without exhaustion this Court is without appellate jurisdiction to consider "any and all claims an inmate may have against the Department," unless the Petitioner is being held illegally by the Department.[8]
"It is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants."[9]
Further, there is no cause of action for habeas relief because there is no allegation that the Petitioner has completed his 20-year sentence or no support for the conclusion that he is overdue for good time release. ON the contrary, his good time has been forfeited by authority of a statute presumed to be valid until otherwise declared. In finding that an inmate challenging his incarceration based on allegations of an unconstitutional statuteas here allegedthe First Circuit, in Ferrington v. Board of Parole, held that no cause of action for habeas relief is stated unless and until the statute relied upon as unconstitutional has previously been held unconstitutional.
"While noting this court's en banc opinion in Madison. another panel of this court found that the inmate's claim was not truly a habeas corpus claim. Bernard, 8411 So2d at 414. The Bernard court noted that the statute, LSA-R.S. 15:571.5, which the inmate challenged as unconstitutional on its face or as applied to him, had never been declared unconstitutional,.... Thus, the court concluded that the triggering event for a habeas corpus claim, i.e., the application of an unconstitutional statute, had not occurred. Accordingly, the Bernard court held that the inmate's claim did not meet the criteria for classification as a true writ of habeas corpus."[10] (emp. added)
The Petitioner challenges the Department's forfeiture of good time for certain unidentified Disciplinary Rule violations primarily because at the time of his plea of guilty to forcible rape in 1992, the Department could only penalize an inmate who violated prison rules by no more than 30 days of good time in a single month.[11] Thereafter, in 1993, the Petitioner opted for "double good time" eligibility in the Department, which he interprets as guaranteeing him a liberty interest in double good time, However, such double good time options only allow him to be eligible to earn 30 days of good time for every 3o days in custodynot to actually earn it. His actual earning of such is dependant upon his continued "good behavior" in prison.
This is primarily an ex post facto claim. Both the United States' and Louisiana's constitutions prohibit ex post facto laws. In determining what constitutes an ex post facto law, the United States Supreme Court classified the following as an ex post facto law, when it (1) makes conduct criminal that was not criminal when committed, (2) increases the punishment for a crime after the commission of the crime, or (3) deprives the defendant of a defense available at the time of the commission of the crime.[12] To be prohibited as an ex post facto law under the Constitution, it must be more than simply a retrospective law that alters a defendant's situation to his disadvantage.[13] Over the years, the Courts had broadened the definition of "ex post facto" to include any post crime law that disadvantaged the accused, rather than limiting the inquiry to whether the post crime law "alters the definition of criminal conduct or increases the penalty by which the crime is punishable."[14] In 2001, our Supreme Court returned to the narrower standard, adopting it once again, in accordance with the holding by the U.S. Supreme Court in Collins v. Youngblood.
Therefore, under the prevailing standard, the only issue with regard to the instant question of an ex post facto law is whether the 1995 amendment to R.S. 15:571.4, increasing the possibility of additional loss of good time for prospective rule violations "increases the penalty by which the Petitioner's original crime of rape was punishable".
R.S. 15:571.4, that affects only the prospective conduct of prisoners, and whose purpose is to encourage discipline and order within the prison, cannot be said to increase the punishment for the crime of rape in this case. While good time eligibility is guaranteed as of the time of the conviction and sentence, the actual earning and/or maintaining of good time is not guaranteed at all. It can be forfeited as long as due process is afforded in the process. It is entirely dependent on the conduct of the inmate while in prison. Disciplinary rules are designed to encourage discipline and good behavior in prison. The possibility of loss of good time is speculative at best, and the Legislature clearly has the authority to change the amount of good time an inmate might lose for disciplinary violations, without violating the ex post facto clause. In this instance, the Petitioner was on notice since 1995 that if he committed certain rule vioaltions in prison, he was subject to forfeit up to 180 days, rather than the previously authorized 3o days. AS long as the forfeiture is applied to prospective conduct only, and not retroactively applied to the prior earned good time, in which the Petitioner has a vested interest, it does not violate any of the constitutional safeguardsespecially the ex post facto clause.[15] The cases cited by the Petitioner to the contrary are pre-Collins & Olivieri and all subscribe to the outdated "disadvantaged" line of reasoning the Supreme Courts later rejected.
The Petitioner's argument that his plea was contingent on good time eligibility likewise does not warrant relief herein. The Petitioner, by his own admission, is good time eligible, as he asserts was part of his plea bargain. In fact, he has apparently earned double good time while he has been in prison. Thus, based on this fact alone, there is no "breach" of his plea agreement, even assuming arguendo that this claim could otherwise merit any relief, which is not suggested herein.[16]
The fact that an inmate might have an expectation of good time eligibility differs considerably from whether the inmate has an inalienable right to maintain all good time credits available, without the possibility of forfeiture thereof for cause even if legislatively authorized. At the core, there is no constitutional right to good time.[17] The Petitioner, upon conviction, has only the right to be eligible for good time if authorized for such by the legislature. The amount of good time for which he is eligible is set by the legislature in R.S. 15:571.3. However, the amount of good time that may be forfeited for disciplinary violations is within the discretion of the Department, subject to the maximum limits set by the legislature. Neither the earning nor the forfeiture of good time is guaranteed either by statute or DOC rule. And neither does the possibility of forfeiture of good time for misconduct "increase" the penaltythe 20-year sentence imposed for rape in this instance. Thus, the argument that the increased forfeiture of good time, applied only to prospective misconduct, is somehow additional punishment for the Petitioner's original crime of rape is without any basis in the law. The Petitioner either misstates the holding in some of his cites or cites case law that has been overruled by Collins and Olivieri, the prevailing jurisprudence on the subject of ex post facto laws.
Further, the Petitioner's argument that the Department has been "arbitrarily" applying R.S. 15:571.4 as amended, is not supported by the facts alleged, and would more importantly, be an issue that could only come to this Court after exhaustion of the administrative remedy proceduresnot as part of a habeas complaint, Nevertheless, the legislature did pass the law that increased the Department's authority to impose greater penalties for prison rule vioaltions, and it cannot be said that merely exercising a legislatively granted prerogative is arbitrary. Further, the Petitioner does not even allege that he was innocent of the hundreds of rule violations that resulted in the loss of good time complained of.
Finally, the case cited by the Petitioner, Ramirez v. California does not stand for the proposition he asserts.[18] He claims that Ramirez stands for the proposition that "forfeiture of good time applied after the commission of the original criminal offense would work to his disadvantage (using the outdated standard) to such an extent as to effectively lengthen his sentence, in violation of the ex post facto law. The Supreme Court ruling he cites in that case did nothing more than deny writs on the ex post facto issue. Nonetheless, it is significant to note that the underlying decision of California Supreme Court in Ramirezwhen faced with the identical issue as hereheld that the application of a new good time forfeiture rule applied to prospective misbehavior only does not violate ex post facto principles because it is not "retrospective" at alla key element of any ex post facto application.[19] The California Court reasoned that while it was true the amendment to the rule applied to the inmate only because he was a prisoner and he was a prisoner only because he had committed the original crime, the increased rule sanctions were only imposed because of misconduct that the inmate participated in after the rule change. And since the sanctions were not part of the original sentence and did not extend the original term of the full sentence, the Court held that it was neither a part of the original sentence nor was it a retrospective application by legal definition.
I point this out only because even under the old standard of review the "disadvantaged" line of reasoning, which was used by the California Court, the Court found no ex post facto violation under facts almost identical to this case. In my opinion, the Court used sound reasoning in deciding this very issue adversely to the Petitioner's assertion, on the basis that the new rule was simply not a retrospective rule because it only applied to prison misconduct that occurred after the amendment to the rule and did not increase the penalty for the underlying crime of conviction.
Therefore, I suggest that even before the adoption of the more narrow standard, there is sound reason to conclude that the application of the amendment only to misconduct in prison after the rule change is not retrospective and therefore, not ex post facto. This is more especially true since the return to the original and narrower interpretation of what an ex post facto law is. The Petitioner's argument must fail entirely because the prison sanctions herein complained of do not lengthen the original sentence that was imposed even though they may work to his "disadvantage." ON the contrary, it only affects the Petitioner's earning of time off of that sentence through "good behavior." The key to his release is in his own ability to control his misconduct, which, by his record, he apparently has not done.

IMPAIRMENT OF CONTRACTS CLAIM
The Petitioner also argues that the application of R.S. 1S:571.4 as amended impairs the obligation of contracts in that it violates the "double good time option" form he signed. This argument is without merit on its face for two reasons. First, the rate option form referred to and quoted in the petition has been held by the First Circuit in Bancroft v. Department of Corrections[20], not to be a contract at all, and therefore, not subject to breach. Also, regardless of whether the option could be termed a contract, it does not refer to a specific amount of good time that can be forfeited and does not guarantee that the forfeiture statutes to which it does not refer at allwill not be amended to lessen or increase the amount subject to forfeiture. The purpose of the option, on the contrary, is simply to allow the inmate to become eligible for increased good time earning in exchange for an irrevocable waiver of incentive wages. The option does not guarantee actual double good time earnings nor prohibit the forfeiture of such good time if misconduct warrants. On the contrary, the option form quoted by the Petitioner alerts the inmate that good time may be lost through disciplinary actions or other means provided by law.

IN SUM
Not only did the legislature authorize the greater good time forfeiture, the Department promulgated rules in connection with R.S. 15:571.4 that notify the prisoners of the additional sanctions they face upon certain rule violations. The Petitioner does not contradict this fact in his petition either. Clearly, the Petitioner's plea bargain, which allegedly included good time eligibility, has no bearing on this complaint and entitles him to no habeas relief in this Court. He does not complain that he is good time ineligible, but rather that he was guaranteed that by his plea, he would earn good time. Whether or not he is entitled to post conviction relief on this issue is not before the Court.. But his conclusion that he was guaranteed irrevocable good time is not in accord with the law. The law only guarantees him eligibility to earn good time.[21] Whether he does or not earn it is dependent on his conduct while in prison. If he violates the prison rules, he is subject to forfeiture of good time, and his due process rights are afforded in the notice he obtains in the rules and the right he has to a hearing upon an alleged violation and the right to appeal the disciplinary board decision to the Secretary and ultimately to this Court, in each case. In this case, he does not allege that he took advantage of that right in any or all of the rule violations he now seeks to have overturned.
As stated, there is no ex post facto application of law in the application of R.S. 15:571.4. It does not increase the penalty for the underlying crime as held by the Supreme Court's holding in Olivieri v. State,[22] wherein the Court held that a law cannot be ex post facto unless it increases the sentence/penalty or makes actions criminal that were not criminal at the time of commission. In the case of forfeiture of good time, the sentence imposed by the trial Court is not increased" at all. Further, there is no retrospective application herein because the Petitioner lost good time only on misconduct committed after the increase was authorized. In this case, the Petitioner's full term date at sentencing was 2011, and even with the forfeitures complained of herein, it is 2008, which is three years less than the sentence imposed. The only way the Petitioner is entitled to the restoration of good time for disciplinary violations is through the appellate process afforded by the Department's promulgated Disciplinary Rules and Procedures. The Petitioner makes no allegation that he raised any of the present issues in either the disciplinary process following each loss or even in a general complaint to the Department regarding its implementation of R.S. 15:571.4.
Thus, for any or all of these reasons, he states no cause of action for habeas or any other relief based on a claim of ex post facto application of R.S. 15:571.4 or breach of contract based on his plea of guilty or the rate option form. He simply makes an unsupported allegation that some of his good time (which is not identified by date or incident) was "cancelled" illegally in violation of his due process rights. Without facts in support, he states no cause of action for any relief from this Court.
In addition, based on the fact that he seeks to have numerous unidentified prior disciplinary board decisions overturned, none of which are identified, I suggest that this Court could not overturn them in any event without a showing that he properly and timely exhausted administrative remedies in connection with each one or that he was unable to appeal each one under circumstances not herein alleged. He does not allege that he appealed any or all of the 46 decisions he now seeks to overturn and offers no explanation why he did not or could not. Without proper exhaustion and a timely appeal of each to this Court, this Court has no appellate jurisdiction to consider the validity of the forfeitures. R.S. 15:571.4 is a valid law, presumed constitutional until held otherwise. The Petitioner puts the cart before the horse by claiming he is overdue for release when the forfeitures he assails have not been properly appealed and overturned and when R.S. 15:571.4 has not been held unconstitutional. Therefore, R.S. 15:1172 requires dismissal.
If the Court agrees either that dismissal is appropriate for any or all reasons stated herein, my formal recommendation follows.

COMMISSIONER'S SCREENING RECOMMENDATION
Therefore, I have carefully reviewed the pleadings and memorandum submitted, and screened the petition pursuant to R.S. 15:1172; 15:1176; 15:1178 and 15:1184 and Art. 927 C.C.P. In addition, after considering the law and jurisprudence appertaining, for reasons stated, I recommend that this petition be dismissed for failure to state a cause of action for habeas or any other relief, and alternatively for lack of jurisdiction because the Petitioner has failed to exhaust administrative remedies first.
Respectfully submitted this 25th day of September 2007 in Baton Rouge, Louisiana.
NOTES
[1] Act 138 repealed and re-enacted with amendments LSA-R.S. 15:571.14, effective January 1, 1992. See 1991 La. Acts, No. 138, § 1. It provided that an inmate could earn thirty days of good time credit for every thirty days served and applied only to those sentenced after its effective date. See Owens v. Stalder, 06-1120 (La. App. 1st Cir. 6/8/07), 965 So.2d 886, 887.
[2] See LSA-R.S. 15:571.3.
[3] See 1995 La. Acts, No. 980, § 1.
[4] The office of commissioner of the 19th JDC was created by LSA-R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. The commissioner's written findings and recommendations are submitted to a district court judge, who may accept, reject, or modify them. LSA-R.S. 13:713(C)(5).
[1] Ferringtort v. Louisiana Bd. of Parole 886 So2d 455 (1st Cir. 2004), stating that "CARP is currently the exclusive remedy by which an offender may challenge the DPS&C's time computations relative to good time, even where an inmate incorrectly labels his claim a writ of habeas corpus. LSA-R.S. 15:1171(B); Madison v. Ward, (825 Sold at 1251-1252)."
[2] See, Bernard v. Louisiana Department of Public Safety and Corrections, (La.App. 1st Cir.9/20/02), 843 So2d 413, 414 (on rehearing), writ denied, (La.1/9/04), 862 So2d 975.
[3] See Ferrington v. Louisiana Bd. of Parole 886 So2d 455.
[4] Pettion, p. 1.
[5] See Docket # 518, 212 dismissed by the 19th Judicial District Court previously.
[6] See DOC 3.5 page Conduct Report attached to the Petitioner's "Emergency Application for Habeas" relief as Exh. B.
[7] See # 518,212 wherein the Court previously dismissed a similar complaint Bled as a habeas and as a review of an administrative decision that refused to restore all good time lost as a result of the Petitioner's 500 rule violations. In that suit, the basis for relief was that the Petitioner has had negative or aggressive impulse disorder since childhood. He argued therein that he is unable to control his impulsive behavior which is the cause of his present conviction for rape alsoand thus, he should not be held responsible for violating the prison rules.
[8] See R.S. 15:1171B.
[9] Robinson v. Parole & Probation Division, 819 So2d 1021 (1st Cir 2001), @ 1024.
[10] Ferrington v. Louisiana Bd. of Parole 886 So2d 455, 457-58 (La.App. 1 Cir., 2004.)
[11] See R.S. 15:571.4 prior to 1995 amendment.
[12] Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111. L.Ed.2d 30; See also State ex rel. Olivieri v. State 779 So2d 735 La., 2001.
[13] Id.
[14] State ex rel. Olivieri v. State 779 So2d 735, 744, La., 2001; see also Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30.
[15] State ex rel. Olivieri v. State 779 So2d 735 La., 2001.
[16] Any alleged plea violation must be raised in the context of a post conviction application filed in the court of conviction pursuant to Art. 924not in this Court in a civil complaint against the Department.
[17] Howard v. La. Bd. of Probation and Parole, 589 So2d 534, 536 (1st Cir.), wr. denied, 590 So2d 87 (La. 1991); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, ...99 S.Ct. 2100, ... (1979); McGhee v. Belisle 501 F.Supp. 189... (E.D. La. 1980).
[18] 106 S.Ct. 2266 (1986), a denial of writs.
[19] 705 P.2d 897 (Cal. S.Ct. 1985).
[20] 635 Sold 738 La.App. 1 Cir., 1994.
[21] See R.S. 15:571.3 and R.S. 15:571.4.
[22] 779 Sold 735 (La. 2001); see also Coffins v. Youngblood 110 S.Ct. 2715 (1991).