# United States Court of Appeals for the Fifth Circuit

———————

No. 22-30159

———————

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2025

Lyle W. Cayce
Clerk

SAMUEL GALBRAITH,

*Petitioner—Appellee*,

*versus*

TIM HOOPER, *Warden, Louisiana State Penitentiary*,

*Respondent—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-181

———————————————————————

ON PETITION FOR REHEARING

Before STEWART, DENNIS, and SOUTHWICK, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

An earlier opinion in this appeal was issued on October 23, 2023. *See Galbraith v. Hooper*, 85 F.4th 273 (5th Cir. 2023). The opinion was later withdrawn. *Galbraith v. Hooper*, No. 22-30159, 2024 WL 1170026 (5th Cir. Mar. 19, 2024). The petition for rehearing is GRANTED.

Samuel Galbraith, a Louisiana prisoner, sued the Louisiana Board of Pardons and Parole ("Parole Board") and sought reinstatement of his parole on the grounds that its rescission just prior to its effective date violated his

due process rights.  The district court agreed with Galbraith and ordered his release on parole within 30 days, subject to the original conditions of his parole.  On appeal, the State argues that Galbraith's claim is barred by 28 U.S.C. § 2244's one-year statute of limitations and that Galbraith did not fully exhaust his state court remedies.  We agree and REVERSE.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2000, Samuel K. Galbraith pled guilty to the 1988 manslaughter and attempted aggravated rape of Karen Hill.  He was sentenced to 71 years of hard labor.  The victim's surviving husband, James Hill, completed a "Louisiana Department of Public Safety and Corrections Victim/Witness Notification Request Form" in November 2000.  The form required the Parole Board to notify the named person when a parole hearing was granted for a specified inmate.  The record does not contain a similar form from any other person requesting notice of Galbraith's potential parole.

In the spring of 2016,[1] Galbraith filed an Application for Parole.  His first possible parole eligibility date was April 23, 2017.  The Parole Board set Galbraith's hearing for October 13, 2016, and sent notification letters on July 7, 2016, to Hill and Jessie McWilliams, Karen Hill's mother, advising them of their right to appear and present testimony at the parole hearing.  McWilliams's letter was erroneously addressed to a post office box in Albany, New York, instead of to the same-numbered post office box in Albany, Illinois.  On September 14, 2016, Galbraith's attorney requested a continuance of the October hearing until November 3, 2016, which was granted.  The Parole Board sent notification letters with the new hearing date to Hill and McWilliams on September 28, 2016, this time to their correct

---

[1] Galbraith's Application for Parole is undated, but other documents in the application reflect dates of early-to-mid 2016.

addresses.    At that time, the Louisiana Administrative Code required notification to be sent to "[t]he victim, spouse, or next of kin of a deceased victim" 30 days before the parole hearing.  LA. ADMIN. CODE tit. 22, pt. XI, § 510(B) (eff. Aug. 2013 to Mar. 2018).[2]  Thus, the Parole Board was required to give notice only to Hill as the surviving husband.  The Parole Board did so.

A pre-parole investigation report was prepared.  The report contained statements from Hill, McWilliams, the Vernon Parish District Attorney's Office, the Vernon Parish Sheriff's Office, and the Vernon Parish sentencing judge.  They all opposed parole.  At Galbraith's parole hearing, a three-member panel of the Parole Board heard testimony and statements from those opposed to his early release.  The panel also heard from Galbraith's family members, who supported his parole.  Galbraith was represented by counsel at the hearing.  The panel unanimously voted to grant parole to Galbraith with a scheduled release date of April 23, 2017, and with a list of specific conditions during his parole term.  The Certificate of Parole showed that Galbraith would reside in Aransas Pass, Texas, and would be subject to the authority of a parole office in Corpus Christi, Texas.

Neither Hill nor McWilliams attended the hearing, but each provided a written statement.  Both were contacted directly by someone from the Department of Corrections after the hearing and were notified of the decision.

---

[2] The statute was amended in March 2018 to require 90-days' notice and to require notice to any person who has filed a victim notice and registration form. *See* LA. ADMIN. CODE tit. 22, pt. XI, § 510(B) (eff. Mar. 2018 to Dec. 2018).  Victim notification errors were not a permissible basis, at least explicitly, for rescission of parole until the code was amended in August 2019. *Compare* LA. ADMIN. CODE tit. 22, pt. XI, § 504(K) (eff. Jan. 2015 to Aug. 2019), *with* LA. ADMIN. CODE tit. 22, pt. XI, § 504(K) (eff. Aug. 2019 to Jan. 2020).

No. 22-30159

After parole was granted, Vernon Parish District Attorney Asa Skinner filed requests for reconsideration of the Parole Board's decision on November 15, 2016, November 30, 2016,[3] and January 9, 2017. In February 2017, the Parole Board denied Skinner's request for reconsideration, explaining that "[t]he panel voted unanimously to grant parole … after serious and thorough consideration" and "[t]he board's policy provides for a reconsideration review only in [limited] circumstances," none of which were applicable in Galbraith's case. Skinner and McWilliams aired their displeasure to the press, leading to negative reporting regarding Galbraith's imminent parole.

In early April 2017, the Parole Board and the Department of Corrections made final preparations for Galbraith's release. On April 10, 2017, Parole Board member Mary Fuentes sent an email to Louisiana Governor John Bel Edwards's Deputy Executive Counsel. Fuentes referred to a news story about Galbraith's release that would air on April 13. Her concern was that the story could impact criminal justice legislation that was desired by the Governor. Two days later, a single Parole Board member, Sheryl Ranatza, added electronic monitoring as a condition of Galbraith's parole. On April 20, 2017, the Parole Board received notice from Texas that the new condition of parole was accepted, and Ranatza signed and issued a Certificate of Parole with a release date of April 23, 2017.

On April 21, 2017, the Special Counsel of the Louisiana Governor's Legislative Staff exchanged emails with a lobbyist from Top Drawer Strategies, LLC. Both expressed concern about the negative media reports

_____

[3] In one of the November 30 letters, Skinner attached a report by retired chief detective, Martin Hilton, who relayed his opinion that Galbraith may be responsible for two cold-case murders in Vernon Parish. Galbraith was never charged with either of these murders, and there is no evidence in the record connecting him to the two victims.

about Galbraith's release and their potential impact on the success of the pending criminal justice reform legislation. The referenced news report included details about interviews with McWilliams, who stated her victim notification letter was sent to the wrong mailing address, and with Skinner, who claimed Galbraith was responsible for two other cold-case murders in Vernon Parish.

On April 21, the same day as the email exchange we just discussed, Galbraith's parole hearing docket record stated: "Rescind Pending Per Mary F," *i.e.*, Parole Board member Mary Fuentes. That day, one Parole Board member, Jim Wise, filled in a "Parole Board Action Sheet" that rescinded Galbraith's parole based on this reason: "Other [—] There may have been tech[n]ical irregularity to victim notice."

Galbraith was not released. In a letter dated May 1, the Parole Board officially notified him of the rescission and repeated the phrasing of the Parole Board Action Sheet:

> This correspondence is to advise you that the Parole Board has voted to rescind the parole granted at your original parole hearing.
>
> This action was taken due to the following:
>
> We have been advised that Other.
> There may have been technical irregularities notifying the victim's family.
>
> You will be scheduled for another hearing on 08/03/2017.

There is no evidence that the Parole Board took any action to rescind parole beyond the one Parole Board member's signing the rescission form. The Parole Board later issued a press release announcing the decision to rescind. It explained that, even though McWilliams received notice of the November 2016 hearing and provided a statement for its consideration, the

No. 22-30159

Parole Board was rescheduling the parole hearing "because of the apparent procedural error which occurred with the initial victim notification."[4]

In May 2017, Galbraith filed an administrative grievance, which was rejected because the Parole Board's decision was discretionary and could not be challenged. In June 2017, Galbraith's counsel sent a letter (1) contesting the decision to rescind for failure to adhere to Parole Board policy, (2) contesting the factual basis of the alleged technicality that occurred with the victim notice, and (3) advising the Parole Board that neither of the two permissible reasons for rescission of parole applied in his case. In July 2017, Galbraith, through counsel, withdrew from parole consideration for the reasons stated in his attorney's June letter.

On July 26, 2017, Galbraith's attorney filed a 42 U.S.C. § 1983 complaint in the Middle District of Louisiana challenging the Parole Board's rescission of his parole. Galbraith sought reinstatement of his parole and immediate release from prison. A year and a half later, the Parole Board filed a motion for summary judgment, arguing Galbraith's exclusive remedy to seek release from custody was through a writ of *habeas corpus*.

Galbraith's attorney then filed a 28 U.S.C. § 2241 application on March 27, 2019, naming the prison's warden as the defendant. We will refer to the defendant as the State because the warden was sued in his official capacity. After concluding the two cases had common legal issues, the district court stayed and administratively closed the Section 1983 proceedings pending resolution of the Section 2241 application. In its answer to Galbraith's Section 2241 application, the State argued Galbraith failed to

_____

[4] As we have already explained, the Parole Board was required to provide 30 days' notice of the hearing, and timely notice was given for the November 2016 hearing. There is no suggestion or record that McWilliams requested notification, and she was not required to be notified under the statute in effect at the time. *See supra* n.2.

exhaust his available state court remedies, his application was time-barred, and his claim lacked merit because the Parole Board's rescission did not infringe any constitutionally protected liberty interest.

In a March 9, 2022, Report and Recommendation, the magistrate judge determined:

(1) Galbraith was not required to exhaust his claims because Louisiana's statutory scheme did not permit him to challenge the Parole Board's rescission under these circumstances;

(2) It was not clear if Galbraith's Section 2241 application was subject to a limitations period;

(3) Even if a one-year limitations period was applicable, Galbraith filed a Section 1983 complaint within that time period seeking *habeas corpus* relief;

(4) Although Galbraith did not have a liberty interest in the granting of parole, there was a state-created liberty interest at issue here because the Parole Board regulations in effect at the time permitted rescission of a parole grant only in two circumstances, neither of which was applicable to Galbraith's situation;

(5) Galbraith was therefore entitled to notice and a meaningful opportunity to be heard prior to rescission of his parole grant, but he received neither; and

(6) A remand to the Parole Board to conduct a rescission hearing would be futile because neither permissible basis for rescission was applicable.

The magistrate judge recommended granting Galbraith's *habeas* application and ordering his release on parole within 30 days, subject to the original conditions of his parole as granted on November 3, 2016. The State filed objections. On March 28, 2022, the district court granted Galbraith's *habeas* application "for the reasons set forth in the Magistrate Judge's

Report." The State filed a timely notice of appeal. We granted an unopposed motion to stay the district court's judgment and release order pending appeal.

The State now argues that the district court erred in holding (1) Galbraith was not required to exhaust state remedies, (2) Galbraith's application was not time-barred, and (3) Galbraith had a protected liberty interest in his parole grant prior to release.

## DISCUSSION

"In a *habeas corpus* appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020) (quoting *Jenkins v. Hall*, 910 F.3d 828, 832 (5th Cir. 2018)).

We first review the district court's legal conclusion about the often-difficult question of which statutory vehicle is proper for a prisoner's claim. Different procedural hurdles apply depending on that answer. We then turn to the State's three arguments about reversible error in the district court's rulings.

I.    Habeas corpus *application or civil rights suit?*

Three possible statutory bases for Galbraith's claim have been proposed: a civil rights suit under Section 1983, a *habeas* application under Section 2241, or a *habeas* application under Section 2254.

We start with Section 1983. A helpful precedent concerned a Section 1983 suit in which two state prisoners claimed that state authorities violated the *Ex Post Facto* and Due Process Clauses of the United States Constitution. *See Wilkinson v. Dotson*, 544 U.S. 74, 76–77 (2005). The alleged violations occurred when officials applied new, harsher guidelines to determine the parole of prisoners whose crimes had been committed when less-demanding

guidelines were used. *Id.* When considered for parole under the more stringent guidelines, the two prisoners were denied and deemed ineligible to seek parole again for five years. *Id.* The prisoners then filed a Section 1983 suit and sought immediate parole hearings under the prior guidelines. *Id.* at 77. The Court held that the constitutional claims were properly brought using Section 1983, and it rejected the argument that "the prisoners' lawsuits, in effect, collaterally attack the *duration* of their confinement; hence, such a claim may only be brought through a *habeas corpus* action." *Id.* at 76, 78. "A consideration of this Court's case law makes clear that the connection between the constitutionality of the prisoners' parole proceedings and release from confinement is too tenuous here to achieve [the state's] legal door-closing objective." *Id.* at 78.

Galbraith, though, is not seeking a new hearing. He insists that the parole he was actually granted was improperly rescinded and should be reinstated. He brings a direct and immediate claim about the duration of his confinement, without the contingency that existed in *Dotson* that a new hearing might not grant parole. *Habeas* is the proper procedure here.

We now examine the *habeas* application Galbraith eventually did file. Galbraith filed for *habeas* under Section 2241. He argued his claim was ripe for immediate *de novo* review by a federal court under Section 2254(b)(1)(B)(i) because there is no Louisiana state corrective process to challenge his parole rescission. The State asserted Galbraith's claims were time-barred because the one-year statute of limitations established by Section 2244(d)(1) applied and he did not file within one year of May 1, 2017, when he received notice of his parole rescission. The district court disagreed.

Quoting *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000), the district court held that Galbraith's challenge to the rescission of his parole was properly brought under Section 2241 (which has no statute of limitations)

because it raised issues regarding "the manner in which a sentence [was] carried out." The district court concluded Section 2244(d)(1)'s one-year statute of limitations did not extend to Section 2241 *habeas* applications, meaning Galbraith's application could not conclusively be deemed untimely. The court further determined Galbraith sufficiently established his claim was not subject to Section 2254's exhaustion requirement. *See* 28 U.S.C. § 2254(b)(1)(B)(i). According to the court, "[w]ithout a mechanism to exhaust, there can be no failure to exhaust," allowing Galbraith's claim to be reviewed by a federal court.

So, was Galbraith's application properly brought under Section 2241, which contains no statute of limitations? Do Section 2254 and the applicable one-year limitations period apply and bar Galbraith's claims? An explanation of the interaction between the two statutes will be useful.

These "two statutes do not represent an either/or dichotomy." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021). Section 2241 is the general statute authorizing federal courts to grant writs of *habeas corpus* in their respective jurisdictions. 28 U.S.C. § 2241(a). This authority "applies to persons in custody regardless of whether [a] final judgment" exists. *Hartfield v. Osborne*, 808 F.3d 1066, 1071 (5th Cir. 2015) (quoting *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987)); *see also* 28 U.S.C. § 2241(c). Once Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts' authority to grant *habeas* relief became more limited. *See* Pub. L. No. 104-132, 110 Stat. 1214; *Shoop v. Twyford*, 596 U.S. 811, 818 (2022). As part of AEDPA, Congress enacted Section 2254, which governs writs to which Section 2241(c)(3) applies. *Topletz*, 7 F.4th at 293.

Importantly, Section "2254 is not an independent avenue through which petitioners may pursue *habeas* relief." *Hartfield*, 808 F.3d at 1073.

"Instead, all *habeas* petitions . . . are brought under [Section] 2241, and [Section] 2254 places additional limits on a federal court's ability to grant [*habeas*] relief if the petitioner is being held in custody 'pursuant to the judgment of a State court.'" *Topletz*, 7 F.4th at 294 (quoting 28 U.S.C. § 2254(a)). Galbraith is in custody because of a state court judgment; his *habeas* application must be viewed under both Sections 2241 and 2254.

With Galbraith's *habeas* application being subject to both statutes, the question remains whether it is also subject to a statute of limitations. The Supreme Court explained that AEDPA "changed the standards governing our consideration of *habeas* petitions by imposing new requirements for the granting of relief to state prisoners." *Felker v. Turpin*, 518 U.S. 651, 662 (1996). Because federal courts' *habeas* authority is now limited by Section 2254, AEDPA's additional "new requirements" for granting relief to state prisoners also apply to writs governed by Section 2254. *Id.* These include Section 2244's limitations. *See* AEDPA § 101, 110 Stat. at 1217. Among those limitations is that the *habeas* application "by a person in custody pursuant to the judgment of a State court" must be filed within one year of various events; relevant here is "the date on which the factual predicate of the claim" was or could have been discovered. 28 U.S.C. § 2244(d)(1)(D).

The district court concluded that, because Galbraith challenged the Parole Board's refusal to hold a hearing prior to the rescission of his parole grant, he is challenging "the manner in which [his] sentence is carried out or the prison authorities' determination of its duration." *Pack*, 218 F.3d at 451. Citing a pre-AEDPA, unpublished Fifth Circuit opinion, the district court further determined that Section 2254 did not apply to Galbraith. *See Richie v. Scott*, 70 F.3d 1269 (5th Cir. 1995) (unpublished table opinion that is precedential under 5TH CIR. R. 47.5.3). In *Richie*, we rejected the district court's determination that the prisoner had to bring his claim under Section 2254, finding that a challenge to the revocation of parole should be brought

under Section 2241 only. *Id.* at *1 (citing *Rome v. Kyle*, 42 F.3d 640 (5th Cir. 1994) (unpublished); *Johnson v. Scott*, 56 F.3d 1385 (5th Cir. 1995) (unpublished)). We concluded that if the party is not contesting the legality or validity of the sentence, Section 2254 is inapplicable. *Id.*

In a later decision, the court concluded that this precedent did not survive AEDPA. *Kimbrell v. Cockrell*, 311 F.3d 361, 362 (5th Cir. 2002). The court considered whether AEDPA's one-year limitation period applied to Section 2254 *habeas* applications "contesting the outcome of prison disciplinary proceedings." *Id.* We held that "when prison disciplinary proceedings result in a change in good-time earning status that extends the prisoner's release date," Section 2254 applies. *Id.* The court refused to treat prison disciplinary proceedings in such a distinct way as to give them "unusual procedural recognition" that would render Section 2244(d)(1)'s one-year limitation period inapplicable. *Id.* at 362–63. Instead, the court concluded that Section 2244(d)(1) "is . . . easily applied" to applications "attacking the prisoner's conviction" and also to those attacking "the calculation of time served." *Id.* at 363. Both applications are seeking "a shorter confinement pursuant to the original judgment," thus "any [Section] 2254 writ application by a 'person in custody pursuant to the judgment of a State court'" is limited by Section 2244(d)(1). *Id.* In other words, when a favorable outcome would affect the amount of time a state prisoner served, "Section 2244(d)(1) literally applies." *Id.*

Galbraith's claim is based on the Parole Board's allegedly improper rescission of his parole. He is requesting that it be reinstated and that he immediately be released from prison. An outcome in Galbraith's favor would affect the time he will serve; indeed, it would end his confinement almost instantly. Section 2244(d)(1) therefore applies.

## II.    *Timeliness*

Because we conclude Galbraith's claim is properly viewed under both Sections 2241 and 2254 and is challenging the duration of time he will serve, we now address the State's argument that the one-year limitations period in Section 2244(d)(1) bars Galbraith's *habeas* application.

Under Section 2241(d)(1), the one-year period begins to run on one of four dates.  28 U.S.C. § 2244(d)(1)(A)–(D).  The latest date that could begin this period for Galbraith's claim is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  § 2244(d)(1)(D).  The factual predicate that is alleged to support Galbraith's claims is the Parole Board's rescission of "his Certificate of Parole based upon facts the Board knew to be false and a reason not enumerated in the [Louisiana] law that allows for rescission."  We must determine on what date Galbraith could have discovered this factual premise.

Galbraith argues that he could not have discovered or verified the facts underlying his claim until after he received complete discovery in his Section 1983 action.  Therefore, Section 2244(d)(1)'s one-year statute of limitations allegedly would not apply.  Galbraith's parole file was confidential and unable to be released to him except through discovery.  *See* La. R.S. § 15:574.12(A); La. Admin. Code tit. 22, pt. I, § 101(K)(6)(c) (2023).  Once Galbraith received full disclosure of the file, he learned that the "technical irregularit[ies]" the Parole Board cited as its reason for rescinding his parole were false because the victim's family had been properly notified of his parole hearing.  Discovery was complete by June 13, 2018, and Galbraith filed his *habeas* application based on these undisputed facts on March 27, 2019.  Because Galbraith could not access his parole file except through discovery, he argues he could not have uncovered the Parole Board's true rationale until June 2018.  He therefore exercised the required due diligence and timely filed

his application. Further, even if the one-year limitations period applied, Galbraith filed his *habeas* application in March 2019, which was within one year of receiving his parole file.

Galbraith's claim is premised on the fact that the Parole Board could only rescind its decision to grant him parole if he "violated the terms of work release" or "engaged in misconduct prior to [his] release." LA. ADMIN. CODE tit. 22, pt. XI, § 504(K) (eff. Jan. 2015 to Aug. 2019).[5] In its notification to Galbraith of its decision to rescind his parole, the Parole Board advised Galbraith that "[t]here may have been technical irregularities notifying the victim's family" of his original parole hearing and explained that was the reason for the rescission. The Parole Board clearly stated the grounds for its decision, which was neither of the reasons authorized by the Louisiana Administration Code. *See id.*

The May 1, 2017 letter notified Galbraith that the Parole Board had rescinded his parole and informed him of its reason for doing so. Neither of Section 504(K)'s reasons were listed in the letter, so Galbraith would have known, upon receipt of the letter, of the argument that the rescission was not statutorily authorized. The possibility that the Parole Board's actual rationale was "false" and that evidence establishing falsity was in Galbraith's

---

[5] Galbraith's argument relies on a prior version of Louisiana's Administration Code that was effective until August 2019. *See* LA. ADMIN. CODE tit. 22, pt. XI, § 504(K) (eff. Jan. 2015 to Aug. 2019). The relevant section has been amended five times since Galbraith's proceedings began. *See* LA. ADMIN. CODE tit. 22, pt. XI, § 504 (historical notes). Under the prior version, the Parole Board did not have explicit statutory authority to rescind Galbraith's parole grant for errors regarding victim notification. At the time, the only permissible bases for rescission were (1) violation of the terms of work release, and (2) misconduct prior to release, and upon rescission, the parolee would promptly receive a new parole hearing. LA. ADMIN. CODE tit. 22, pt. XI § 504(K) (eff. Jan. 2015 to Aug. 2019). Victim notification errors were not a permissible basis for parole rescission until August 2019. LA. ADMIN. CODE tit. 22, pt. XI, § 504(K)(2) (eff. Aug. 2019 to Jan. 2020). We will use the law that was in effect at the time of Galbraith's filings.

parole file is irrelevant to his claim. Galbraith "is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence to support that claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a *habeas* petitioner gathers every possible scrap of evidence that might . . . support his claim." *Id.*

For Galbraith to file for *habeas* relief, all that was required under Section 2244(d)(1)(D) was that he know the factual premise of the claim. Here, that premise is the Parole Board's rescinding Galbraith's parole for a reason other than that he "violated the terms of work release" or "engaged in misconduct prior to [his] release." La. Admin. Code tit. 22, pt. XI, § 504(K) (eff. Jan. 2015 to Aug. 2019). Galbraith knew that premise upon receipt of the May 1, 2017 letter; thus, Section 2244(d)(1)'s one-year limitations period began to run on that date. He therefore was required to file his *habeas* application by May 2018. Galbraith filed his application on March 27, 2019, roughly 10 months after the one-year limitations period ended. Galbraith's *habeas* application is thus time-barred absent tolling.

Galbraith argues, and the district court determined, that even if Galbraith's *habeas* claim was subject to a one-year limitations period, it was tolled when he filed his Section 1983 complaint on July 26, 2017, because that complaint was a *de facto habeas* application. We need not decide this issue because of our holding in the following section.

## III.  *Exhaustion of state remedies*

"An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that— (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). On appeal, the State repeats the arguments it made to the district court that Galbraith could have

raised his challenge in a state *habeas corpus* application and has thus failed to exhaust his state court remedies. It relies heavily on *Sinclair v. Stalder*, 867 So. 2d 743 (La. Ct. App. 1st Cir. 2003), and *Sneed v. Hooper*, 328 So. 3d 1164 (La. 2021). The district court rejected the argument that Galbraith could have filed a state *habeas* application, because it concluded Louisiana's statutory scheme does not permit a challenge to the Parole Board's rescission on *any* ground *except* for the denial of a revocation hearing. Because of the perceived lack of any available state corrective process, the district court held there was no state mechanism for Galbraith to exhaust, so his claim was reviewable in federal court under Section 2254(b)(1)(B)(i).

"Whether a federal *habeas* petitioner has exhausted state remedies is a question of law reviewed *de novo*." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). The "exhaustion requirement is not jurisdictional, but 'reflects a policy of federal-state comity . . . designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Id.* (alteration in original) (quoting *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001)).

An applicant has not exhausted his available remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." § 2254(c). The district court relied on the fact that "Louisiana's parole statutes allow for appeal of parole board actions in only one circumstance." *See* La. R.S. § 15:574.11. Even if that is so, exhaustion is still required if there is some other state procedure available. The pertinent language in the parole statute is this:

> Parole is an administrative device for the rehabilitation of prisoners under supervised freedom from actual restraint, and the granting, conditions, or revocation of parole rest in the discretion of the committee on parole. *No prisoner or parolee shall have a right of appeal from a decision of the committee*

regarding release or deferment of release on parole, the imposition or modification of authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or the revocation or reconsideration of revocation of parole, *except for the denial of a revocation hearing under R.S. 15:574.9.*

La. R.S. § 15:574.11(A) (emphasis added).

Another relevant parole statute provides:

The committee may order revocation of parole upon a determination that:

(1) The parolee has failed, without a satisfactory excuse, to comply with a condition of his parole; and

(2) The violation of condition involves the commission of another felony, or misconduct including a substantial risk that the parolee will commit another felony, or misconduct indicating that the parolee is unwilling to comply with proper conditions of parole.

§ 15:574.9(B).

Based on this statutory language, a prisoner has no right to appeal a decision by the Parole Board unless his parole was revoked under Revised Statute 15:574.9 without a revocation hearing. *See Leach v. La. Parole Bd.*, 991 So. 2d 1120, 1124 (La. Ct. App. 1st Cir. 2008). This explains why Galbraith's attempt at filing an administrative grievance to challenge the Parole Board's decision was rejected. The stated reason was the Parole Board's policy that "decisions of these boards are d[i]scretionary and may not be challenged," which follows Louisiana's parole statutes.

Even so, we must consider whether there was any other available state court remedy that Galbraith could have used. One possibility, seeking a writ of *habeas corpus*, generally is "not the proper procedural device for petitioners" in Louisiana seeking "post-conviction relief" because *habeas*

"deals with *preconviction* complaints concerning custody." *State ex rel. Bartie v. State*, 501 So. 2d 260, 263 (La. Ct. App. 1st Cir. 1986). "An application for post-conviction relief is a petition . . . seeking to have the conviction and sentence set aside." *Id.* (emphasis removed); *see also* LA. CODE CRIM. PROC. art. 924. There are instances, however, when state *habeas* does apply in a post-conviction setting in Louisiana when the applicant is not seeking to set aside his original sentence. *See Sinclair v. Kennedy*, 701 So. 2d 457, 460 (La. Ct. App. 1st Cir. 1997). Louisiana Code of Criminal Procedure Article 362(2) governs these cases, and it states *habeas* "relief shall be granted" if "[t]he original custody was lawful, but by some act, omission, or event which has since occurred, the custody has become unlawful." *Id.*

A Louisiana intermediate court held that a state *habeas* application "is the proper mechanism" when "an inmate . . . claims his initially lawful custody became unlawful due to the parole board's actions in denying him release on parole." *Sinclair v. Stalder*, 867 So. 2d at 744. That is similar to Galbraith's claim, though in *Sinclair* the prisoner's parole was denied while here the parole, already granted, was rescinded. That opinion is the most closely relevant authority cited to us. Although Galbraith is contesting the duration of his sentence and seeking a shorter confinement, he is neither challenging the validity of his original sentence nor seeking to have the sentence set aside. Instead, he is asserting that a lawful sentence has now become unlawful because the Parole Board had no authority to rescind his Certificate of Parole and then deny him release.

Galbraith did not pursue *habeas* relief, and the State argues he has failed to satisfy the need to exhaust state remedies before seeking relief in federal court. Galbraith argues he did not need to begin in state court because *Sinclair v. Stalder* held that even though state *habeas* is the proper procedure for a claim such as this, no relief can be granted. That court said "the fact that an action may be properly maintained as a petition for a writ of *habeas*

*corpus* does not end the inquiry into whether a cause of action has been stated." *Id.* Because the parole statute provides only two bases to contest a parole board decision, the court held, any "[p]leadings challenging actions of the parole board other than [the two statutory reasons] should be dismissed." *Id.* The opinion also explains that the inmate failed to state a cause of action. As a result, Galbraith in essence is arguing that there were no "remedies available in the courts of the State." § 2254 (b)(1).

At times this court, and other circuit courts, have discussed availability in terms of futility. In one decision, we held that "exhaustion is not required if it would plainly be futile." *Morris v. Dretke*, 413 F.3d 484, 492 (5th Cir. 2005). We found futility when the state's highest court had recently decided the same legal issue adversely to the *habeas* applicant. *Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999). Such a standard mirrors the level of clarity sister circuits require. *See* BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 9C:53 (collecting cases).

Regardless of whether "futility" is the best terminology, Galbraith has failed to show there is no available state procedural remedy. We have already identified one distinction with *Sinclair*, namely, that the inmate there was denied parole — which the court said was entirely discretionary — while Galbraith's parole was first granted but then rescinded before he was released. Consequently, even if *Sinclair* expresses the manner in which all Louisiana courts would resolve a similar case, we do not see that reasoning to be clearly applicable here. In addition, Galbraith's one state intermediate court opinion does not suffice. In *Fisher*, we held there was clarity about the relevant state law because of a recent state supreme court opinion. No such clarity exists here. Importantly, we agree with the observation by another panel of this court that if the uncertainty concerns a matter of state procedure and not the merits of an applicant's claims, even more respect is potentially

due to the requirement to exhaust. *Berkley v. Quarterman*, 310 F. App'x 665, 671–72 (5th Cir. 2009).

Because Galbraith is "claiming he is entitled to *immediate release* under [Article] 362," he should have raised his challenge in a state *habeas* application in the appropriate state district court. *Madison v. Ward*, 825 So. 2d 1245, 1254 (La. Ct. App. 1st Cir. 2002) (*en banc*), *superseded by statute on other grounds*, Act No. 460, 2005 La. Acts 2174. Had he sought relief using Article 362(2), state courts would have resolved the legal issues he now raises with us. Under AEDPA, Galbraith was required to give state courts a chance before applying for federal *habeas* relief. Galbraith did not exhaust his available state court remedies and therefore is not entitled to federal *habeas* relief.

The petition for rehearing is GRANTED. The judgment of the district court is REVERSED and RENDER judgment for Respondent Hooper.

No. 22-30159

James L. Dennis, *Circuit Judge*, dissenting:

The majority says Galbraith did not exhaust his state remedies because, at least in theory, he could have filed a state *habeas* petition under Article 362(2) of the Louisiana Code of Criminal Procedure to challenge the Parole Committee's decision to rescind his parole grant. But whether Louisiana law permits such a challenge is an unresolved and contested question. The Louisiana Supreme Court has never addressed the scope of the state district courts' *habeas* jurisdiction in this precise context, and the state's intermediate appellate courts have reached conflicting results. In the absence of clear controlling authority, I would not undertake an *Erie* guess to settle this open question of state law as the majority does—particularly not in a way that forecloses federal *habeas* review. Moreover, even assuming Louisiana courts might entertain such a petition under their original jurisdiction, the district court below lacked the opportunity to address whether pursuing that remedy would have been futile under the circumstances of this case in the first instance. As an appellate court, we are bound to review questions decided below, not to decide in the first instance questions that were never passed upon.

I would therefore either certify the question to the Louisiana Supreme Court, or, in the alternative, vacate the district court's judgment and remand for consideration of the availability, adequacy, and futility of any state corrective process in the first instance. Because the majority concludes otherwise, I respectfully dissent.

\*     \*     \*

The majority's exhaustion analysis turns on the interaction of Article 362(2) of the Louisiana Code of Criminal Procedure and Section 15:574.11(A) of the Louisiana Revised Statutes. Article 362(2)—a general provision about *habeas corpus*—provides a mechanism for relief to prisoners who file a writ of

*habeas corpus* in state court challenging an order of custody when the original custody was lawful, but by some act, omission, or event which has since occurred, the custody has become unlawful. Louisiana Revised Statute § 15:574.11(A)—a specific statute about the finality of parole committee decisions—provides that "[p]arole . . . rest[s] in the discretion of the committee on parole." To that end:

> No prisoner or parolee shall have a right of appeal from a decision of the committee regarding release or deferment of release on parole, the imposition or modification of authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or the revocation or reconsideration of revocation of parole.

*Id.* Section 15:574.11(A) carves out one exception: a prisoner or parolee *does* have a right to appeal the parole committee's "denial of a revocation hearing under R.S. 15:574.9."[1] It is undisputed that this exception is inapplicable here.

An "appeal" under § 15:574.11(A) refers to the state district court's "review of an administrative tribunal's action" and "is considered functionally to be an exercise of its appellate review jurisdiction." *Madison v. Ward*, 2000-2842 (La. App. 1 Cir. 7/3/02), 825 So. 2d 1245, 1250 n.7 (en banc) (citing *Loop, Inc. v. Collector of Revenue*, 523 So. 2d 201, 203 (La. 1987)), *superseded by statute on other grounds*, 2005 La. Acts, No. 460, § 1. The Louisiana Constitution confines the state district courts' exercise of

---

[1] Section 15:574.9(A) entitles a parolee, upon his return to the custody of the Department of Public Safety and Corrections, to a hearing before the parole committee "to determine whether his parole should be revoked, unless said hearing is expressly waived in writing by the parolee." Section 15:574.9(B)–(H) sets forth, *inter alia*, the hearing procedure and the standard by which the parole committee may revoke parole.

appellate jurisdiction to that which is specifically authorized by statute. LA. CONST. ANN. art. V, § 16(B); *Loop, Inc.*, 523 So. 2d at 203. As such, "[a] litigant seeking judicial review of administrative action in a district court must establish that there is a statute which gives subject matter jurisdiction to that court." *Loop, Inc.*, 523 So. 2d at 203. And where the governing statute prescribes a particular procedure for obtaining judicial review, that procedure must be followed; jurisdiction cannot be invoked "unless there can be found within the act a genuine legislative intent to authorize judicial review by other means." *Id.* (citing *Corbello v. Sutton*, 446 So. 2d 301, 302 (La. 1984)). Section 15:574.11(A) expressly limits appellate jurisdiction over decisions of the parole committee to those arising from the denial of a revocation hearing under LA. R.S. § 15:574.9. This suggests that state district courts lack subject matter jurisdiction to consider any challenge to parole committee decisions other than those concerning the "denial of a revocation hearing under R.S. 15:574.9." LA. R.S. § 15:574.11(A); *see also Madison*, 825 So. 2d at 1250 n.7.

The district court below concluded that Galbraith could not obtain redress in state court because § 15:574.11(A) "effectively deprived [Galbraith] of a procedure to challenge the actions of the Parole [Committee] in rescinding his parole." The majority agrees that § 15:574.11(A) bars appellate review of parole committee decisions but nevertheless holds that Galbraith could have pursued his claim through a state *habeas* petition under Article 362(2). *Ante*, at 18–19. This conclusion necessarily assumes that state district courts possess original jurisdiction to hear *habeas* petitions challenging any parole committee decision. Yet, the Louisiana Supreme Court has never resolved this jurisdictional question and, contrary to the majority's analysis, state intermediate appellate courts are divided on whether Article 362(2) provides a viable means of relief in this context.

No. 22-30159

The majority's holding turns on one line of cases that permits state *habeas* petitions challenging parole committee decisions but dismiss those failing to allege the denial of a revocation hearing under § 15:574.9 (again, the sole exception to § 15:574.11(A)'s general prohibition) as failing to state a cause of action. *Ante*, at 16–19. For example, in *Sinclair v. Kennedy*, 96-1510 (La. App. 1st Cir. 9/19/97), 701 So. 2d 457, 461–62, the Louisiana First Circuit Court of Appeal considered a prisoner's *habeas* petition claiming he was wrongfully denied parole despite satisfying all eligibility criteria and, thus, was entitled to immediate release. Because the prisoner did not contest the validity of his underlying conviction or sentence, but instead "claim[ed] his initially lawful custody became unlawful due to the parole [committee]'s actions in denying him release on parole," *habeas* was an available remedy. *Id.* at 462. Nevertheless, *Kennedy* ruled that the prisoner failed to state a cause of action allowing for *habeas* relief because merely qualifying for parole did not entitle him to immediate release.[2] *Id.*

Later, in *Sinclair v. Stalder*, 2003-1568 (La. App. 1 Cir. 10/17/03), 867 So. 2d 743, the First Circuit again considered a prisoner's *habeas* petition seeking review of the parole committee's decision denying him parole. Citing *Kennedy*, the court agreed that a *habeas* petition "is the proper mechanism for an inmate who claims his initially lawful custody became unlawful due to the parole [committee]'s actions in denying him release on parole." *Id.* at 744. However, the court ruled that the prisoner's petition failed to state a

_____

[2] *Kennedy*'s holding relied heavily on *State ex rel. Bartie v. State*, 501 So. 2d 260 (La. Ct. App. 1986), a case involving a prisoner's *habeas* claim that the Louisiana Department of Public Safety and Corrections had miscalculated his time served and that, upon proper calculation, he was entitled to immediate release. *Bartie* found that such an action should be categorized as a post-conviction *habeas corpus* action because the prisoner did not "contest the validity of his conviction or sentence[.]" *Id.* at 263. Critically, *Bartie* did not squarely address whether *habeas* relief was available when challenging a decision of the parole committee. *See Madison*, 825 So. 2d 1245, 1250 n.7.

No. 22-30159

cause of action because the "parole statutes do not create an expectancy of release or liberty interest." *Id.* (citing *Bosworth v. Whitley*, 627 So.2d 629, 633 (La. 1993)).[3]

A more recent line of cases, however, suggest the specific limitations of § 15:574.11(A) broadly prohibits state district courts from considering any challenge to a parole committee decision—via *habeas* or otherwise—unless the prisoner or parolee alleges they were denied a revocation hearing under § 15:574.9. In other words, § 15:574.11(A) is a specific statutory exception to general state *habeas* relief. Beginning with *Madison v. Ward*, 825 So. 2d at 1250 n.7, the Louisiana First Circuit Court of Appeal sitting en banc revisited its approach to reviewing parole decisions in light of a growing number of prior First Circuit rulings that had permitted post-conviction *habeas* relief in such cases. The court explained that Louisiana "jurisprudence has not satisfactorily addressed the appropriate procedure for challenges to actions of the Board of Parole." *Id.* The threshold question *Madison* considered was *what* parole committee actions may be challenged:

> We find the clear meaning of La. R.S. 15:574.11(A) is that there shall be no appeal of decisions of the [committee] unless the procedural due process protections specifically afforded by the hearing provisions of La. R.S. 15:574.9 are violated. *See Smith v. Dunn*, 263 La. 599, 268 So.2d 670, 671 (1972). Thus, for example, challenges to the [committee]'s denial of parole, revocation of parole, refusal to consider an inmate for parole, or imposition of parole conditions would not be subject to

---

[3] *Stalder* seemed to observe the tension between § 15:574.11(A) and Article 362(2) but made no effort to resolve it. Because the petitioner sought review of a parole committee decision beyond the scope of § 15:574.9, the court found "no statutory basis for [the petitioner] to seek review" of that decision. *Id.* Despite this, the court evaluated the merits of the *habeas* petition by applying *Kennedy*'s reasoning that a *habeas* petition is permissible to challenge the parole committee's actions in denying release on parole. *Id.*

> appeal. This statement is consistent with *Bosworth v. Whitley*, 627 So.2d 629, 633 (La. 1993), which cites United States Supreme Court decisions holding that the existence of a parole system does not by itself give rise to a constitutionally protected liberty interest and that laws or regulations providing that a parole [committee] "may" release an inmate on parole have not been found to give rise to that interest; *Bosworth* goes on to say that "the Parole [Committee] has full discretion when passing on applications for early release." *Bosworth*, 627 So.2d at 633.

*Id.* It follows, *Madison* observed, that "[o]nly where it is alleged that the hearing provisions of La. R.S. 15:574.9 were violated is appeal allowed." *Id.*

*Madison* then turned to the question of "*how* such appeal is to be accomplished" under § 15:574.11. *Id.* (emphasis added). For example, it reaffirmed that parole decisions are not subject to review under the Louisiana Administrative Procedure Act. *Id.* (citing *Smith v. Dunn*, 268 So. 2d 670, 671–72 (La. 1972) ("[T]he special provisions in Title 15 creating the Board of Parole and setting out its powers and duties are not complementary or supplementary to the general administrative rules of procedure.")). The court then sharply limited the scope of all other possible procedural avenues, holding that "pleadings challenging actions of the parole [committee] other than failure to act in accordance with La. R.S. 15:574.9, *whether styled as writs of habeas corpus or captioned in some other fashion*, should be dismissed by the district court." *Id.* (emphasis added). By contrast, only "[p]leadings alleging a denial of a revocation hearing under La. R.S. 15:574.9, however styled," were to be "reviewed on the merits by the district court." *Id.* In adopting this restrictive procedural rule, the *Madison* court abrogated all prior First Circuit jurisprudence "considering challenges to parole [committee] actions in a manner other than that outlined" in its opinion, noting that such decisions "are without precedential effect to the extent [they are] inconsistent with the

procedure we adopt today." *Id.* This broad repudiation of earlier authority reasonably extends to the portions of *Kennedy*, 701 So. 2d at 462, upon which *Stalder*, 867 So. 2d at 744, and now the majority relies upon to support the availability of state *habeas* review. In substance, *Madison*'s procedural holding did not merely define the method of review—it functionally eliminated state *habeas* petitions as a viable remedy for challenging parole committee actions outside the narrow confines of § 15:574.9.

More recent, albeit unpublished, decisions from the Louisiana First Circuit Court of Appeal reflect a consistent trend of dismissing state *habeas* petitions that challenge parole committee decisions unrelated to the denial of a revocation hearing, citing a lack of jurisdiction. In *Boston v. Jones*, 2009-1778 (La. App. 1 Cir. 6/4/10), 2010 WL 2844344, the court rejected a *habeas* petition filed by a parolee alleging procedural violations during the revocation process. The court explained that "[t]o properly assert [a] right of review of the [committee]'s decision, a parolee is required to file a petition for judicial review in a district court, alleging that his right to a revocation hearing was denied . . . ." *Id.* at *1 (citing *Leach v. La. Parole Bd.*, 2007-0848 (La. App. 1 Cir. 6/6/08), 991 So. 2d 1120). Because the parolee had instead filed a *habeas* petition claiming his confinement was unlawful, the court was "unable to consider the propriety of the [committee]'s decision or the validity of the inmate's waiver of the final parole revocation hearing."[4] *Id.* Similarly, in *Gatson v. La. Dep't of Pub. Safety & Corr.*, 2014-1127 (La. App. 1 Cir. 3/6/15), 2015 WL 997222, the court dismissed a *habeas* petition challenging the revocation of parole where the petitioner conceded that a revocation hearing

---

[4] Like *Boston*, some First Circuit decisions have suggested that a petition for judicial review is the exclusive avenue to challenge parole committee decisions. *See, e.g.*, *Moore v. La. Parole Bd.*, 2022-1278 (La. App. 1 Cir. 6/2/23), 369 So. 3d 415, 418 (citation omitted); *Williams v. La. Dep't of Pub. Safety & Corr.*, 2023-1235 (La. App. 1 Cir. 6/27/24), 2024 WL 3198974 at *2–3.

had been held. Because the claim did not concern the denial of a hearing, the court held it "was not properly a claim for *habeas corpus* relief under Article 362," and affirmed the district court's conclusion that it "lacked subject matter jurisdiction over appellant's challenge of the Parole [Committee]'s decision to revoke his parole." *Id.* at *2–3. These cases cast further doubt on the viability of state *habeas* petitions as an accepted means of challenging parole committee decisions under *Kennedy*, 701 So. 2d at 462 and *Stalder*, 867 So. 2d at 744.

At most, then, Louisiana intermediate appellate courts offer uncertain and inconsistent support for the majority's conclusion that Galbraith could have pursued his challenge through a state *habeas* petition. And the Louisiana Supreme Court has not weighed in at all. True enough, Galbraith's claim tracks the language of Article 362(2) in a general sense: he alleges his "original custody was lawful" but contends that the parole committee's subsequent "act" of rescinding his parole rendered his continued confinement "unlawful." La. Code Crim. Pro. art. 362(2); *Kennedy*, 701 So. 2d at 462; *Stalder*, 867 So. 2d at 744. But a growing body of Louisiana caselaw casts serious doubt on whether state district courts may entertain *habeas* petitions (or any other pleadings) challenging parole committee decisions outside the narrow confines of La. R.S. 15:574.9 under either their original or appellate jurisdiction. *See, e.g.*, *Madison*, 825 So. 2d at 1250 n.7; *accord Leach*, 991 So. 2d at 1125; *Gatson*, 2015 WL 997222 at *2–3. To speak authoritatively on the availability of a state *habeas* remedy here would be, at best, a jurisprudential gamble. *Compare Galbraith v. Hooper*, 85 F.4th 273, 284 (5th Cir. 2023) (finding no available state *habeas* remedy because Galbraith's claim did not fall within the jurisdictional bounds of § 15:574.11), *op. withdrawn*, No. 22-30159, 2024 WL 1170026 (5th Cir. Mar. 19, 2024), *with ante*, at 20 (holding that Galbraith could have brought his claim in a state *habeas* application).

No. 22-30159

Even more troubling, the majority makes its *Erie* guess without the benefit of a considered judgment from the district court. The district court did not analyze whether Louisiana state district courts possess original jurisdiction to hear a *habeas* petition under Article 362 in this context. And understandably so: neither party raised it below, nor has either meaningfully briefed it on appeal. "[M]indful that we are a court of review, not of first view," judicial humility cautions against "seek[ing] out alternative grounds" to deny relief—especially where those grounds were neither addressed by the district court nor developed by the parties. *Rutila v. Dep't of Transp.*, 12 F.4th 509, 511 n.3 (5th Cir. 2021) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). "[R]ather than decide these heady questions ourselves without the benefit of any considered judgment below," our well-established practice is to vacate and remand to allow the district court to consider the issue in the first instance. *See, e.g.*, *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 957 (5th Cir. 2024); *Arnesen v. Raimondo*, 115 F.4th 410, 414 (5th Cir. 2024); *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017).

The majority nevertheless forges ahead with a significant departure from our prior opinion's exhaustion analysis—despite the serious due process violation we recognized there—without the benefit of a district court ruling and relying on nothing more than an *Erie* guess. Instead of guessing, I would either certify the question to the Louisiana Supreme Court or, in the alternative, remand for our capable district court colleague to weigh in first.[5]

---

[5] I do not view the majority opinion to conclude that Galbraith's petition was untimely because it acknowledges but does not resolve the district court's timeliness ruling. *Ante*, at 15 ("We need not decide this issue because of our holding in the following section."). Lest there be any doubt, I would find Galbraith's petition timely for the reasons stated by the district court.

No. 22-30159

Because the majority provides no answer to the concerns I have raised, I respectfully dissent.